PETER G. POLHEMUS, PLAINTIFF, ALSO DEFENDANT IN ERROR, v. PRUDENTIAL REALTY CORPORATION AND RICHARD J. DEUTZ, DEFENDANTS, THE LATTER, PLAINTIFF IN ERROR.

Submitted July 9, 1906—Decided March 4, 1907.

1. A promissory note has no legal inception or valid existence until it has been delivered. When, however, it passes into the hands of a *bona fide* holder for value before maturity, it becomes a chose in action, and the reciprocal rights and duties of the parties to it are fixed. Delivery is, normally, to be in accordance with the purpose and intent of the parties to a note, but this is subject to exceptions, of which one obtains when the departure from the intent of the parties is one of mode only.
2. A promissory note may be the subject of valid transfer and delivery by way of pledge or collateral security.

3. A party to a note who has himself received no value may nevertheless become liable to a holder for value, the holder having incurred a detriment on the faith of such party's name. When there are several parties to a note, who have become such for the benefit of another, their *status*, not only as to the holder for value, but *inter sese*, is, in the absence of relevant proof to the contrary, that which is shown by the paper upon which they have placed their names.

4. A creditor holding commercial paper as a pledge or collateral security may bring either an action to enforce the principal debt, or one to collect the pledged paper, at pleasure.

5. A person other than the real debtor, but in somewise liable for the debt, may pay the debt to the creditor, and is thereupon entitled to subrogation to the rights of the creditor in any pledge or collateral security held by him. When two or more persons are thus liable in succession, they will enjoy the right of subrogation successively, according to their contractual relations. The right of subrogation itself not being in question, the right of realizing the value of the subject-matter may, on proper occasion, be within the cognizance of a court of law.

6. When a person who has endorsed a note and parted with it, again comes into possession of it in a *bona-fide* manner, he may strike out his own and subsequent endorsements, and sue the prior parties upon the note.

7. A plaintiff who has made a *prima facie* case within the scope of the foregoing principles has shown in himself a right of action which entitles him to go to the jury. A nonsuit is then rightly refused.

8. When a defendant has put in a plea denying the truth of the plaintiff's declaration, but wholly abstains from supporting his plea by evidence, virtually resting his case on the evidence of the plaintiff, the *prima facie* evidence of the plaintiff not merely entitles him to go to the jury, but, in the absence of all discrediting circumstances, becomes decisive of the issue. In such a case a direction of a verdict for the plaintiff is not erroneous.

---

On error to the Supreme Court.

This was an action *ex contractu* begun in the Supreme Court by the defendant in error, Peter G. Polhemus, against the plaintiff in error, Richard J. Deutz, impleaded with the Prudential Realty Corporation.

The declaration was in the form prescribed by the Practice act of 1903 (*Pamph. L., p.* 542, § 30), and the notice annexed to the declaration contained a copy of the promissory note and the endorsements thereof, as follows:

"$2,000.         New Brunswick, N. J., Mar. 28th, 1904.

"Three months after date, we promise to pay to the order of Prudential Realty Corporation two thousand dollars, at National Bank of N. J., New Brunswick, N. J., value received.                    Prudential Realty Corporation.

"R. J. Deutz, *President.*
"B. H. Clickner, *Treasurer.*"


[Endorsed.]
"Prudential Realty Corporation.
"R. J. Deutz, *President.*
"B. H. Clickner, *Treasurer.*
"R. J. Deutz.
"P. G. Polhemus."


The defendant corporation suffered judgment by default to be entered, but the defendant Deutz interposed a plea of the general issue.

The issue joined was tried at the Somerset Circuit, before Mr. Justice Garretson and a jury.

At the trial evidence was adduced on the part of the plaintiff which exhibited a state of facts as follows:

The Prudential Realty Corporation, in the winter or early spring of 1904, was in need of ready money for the payment of outstanding obligations, and, for the purpose of raising the money, made and endorsed, by its official agents, the promissory note for $2,000 set out in the notice annexed to the declaration, and delivered the same to Richard J. Deutz and Peter G. Polhemus, the former of whom was a shareholder in the corporation and the president thereof, and the latter was a shareholder, and was or had been a director. The note remained in the hands of Deutz and Polhemus until April 4th, 1904, when, to carry out the purpose for which the note was made and endorsed by the corporation, they borrowed the sum of $2,000 from the Trenton Trust and Safe Deposit Company upon a note, made and endorsed by themselves, which was, in part, in the form following:

"TRENTON, N. J., April 4th, 1904.

"On June 1st, 1904, for value received, we jointly and severally promise to pay to the order of ourselves two thousand dollars, having deposited as collateral security for the payment of this  *  *  *  a note of the Prudential Realty Corporation, dated March 28th, 1904, payable to the order of the Prudential Realty Corporation, for $2,000, endorsed by Richard J. Deutz and P. G. Polhemus."

And at the same time they endorsed the corporation note in the order and manner set forth in the notice above mentioned, and delivered the same note to the trust and safe deposit company as a collateral security for the repayment of the money borrowed.

The joint and several note of Deutz and Polhemus fell due on June 1st, 1904, about four weeks before the corporation note became payable, and was not paid at its maturity, whereupon an action upon it was begun by the trust and safe deposit company for the recovery of the money loaned. Pending that action the corporation note fell due, was presented for payment at the National Bank of New Jersey, and was dishonored, of which dishonor notice appears to have been given. Before judgment was recovered by the trust and safe deposit company, Polhemus went to the company and repaid the borrowed money ($2,000), and thereupon he received and became possessed of both the joint and several note and the corporation note which had been given to the company as collateral security. No part of the money thus paid out by Polhemus had, up to the time of the trial, been repaid to him by any person whomsoever.

At the close of the plaintiff's case, a motion for a nonsuit, on the ground that the plaintiff had shown no right of action in himself upon the corporation note, was made on behalf of the defendant Deutz. This motion being denied, the defendant prayed an exception, which was signed and sealed. The defendant wholly abstained from offering any evidence in support of his plea, and the case went to the jury on a very brief charge by the presiding justice that, no defence having

been made out in law, a verdict should be found for the plaintiff for the sum due upon the note. To this instruction an exception was also prayed and sealed.

A verdict having been found in accordance with the instruction, judgment was entered for the plaintiff, and to review the same, a writ of error was sued out by the defendant. He assigns as error that the court refused to nonsuit the plaintiff upon the conclusion of the plaintiff's testimony, and that the court directed the jury to render a verdict for the plaintiff.

For the plaintiff in error, *Edwin Robert Walker.*

When the collateral note was surrendered by the Trenton Trust and Safe Deposit Company to Polhemus, the plaintiff below, he again held it for himself and Deutz, in the same character as before its pledge, namely, as trustees for the corporation. He had paid no money upon it, and, as between himself and Deutz, no right of action had arisen upon it.

The ruling and direction of the court below were inaccurate and illegal, the facts in evidence being considered, and Polhemus should have been driven to an action against Deutz for a contribution only upon the joint note which, by the action of the trust and safe deposit company, he was actually compelled to pay. Having mistaken his remedy, the present action upon the collateral note must fail.

For the defendant in error, *Scott Scammell.*

The opinion of the court (the foregoing statement having been made) was delivered by

GREEN, J. By way of introduction, it should be remarked that the counsel of the defendant in error objects to both of the assignments; that they lack definiteness in pointing out the grounds of error. It may be that if the arguments of the plaintiff in error seemed to us of compelling force, we would be obliged to inquire whether he had, as a matter of practice, secured a firm foundation whereon his arguments might rest,

but as our consideration of the case leads us to deny any such force to the arguments, the preliminary inquiry is needless.

The questions now to be solved are two, to wit, Had the plaintiff below, when he rested, shown in himself a right of action which entitled him to go to the jury? and, When the defendant below abstained from offering any evidence in support of his plea, had the plaintiff already proved such facts as warranted the direction of a verdict in his favor?

I. *Firstly.* Had the plaintiff below, when he rested, shown in himself a right of action which entitled him to go to the jury? In answering this question several legal principles must have their proper application.

(1) A promissory note has no legal inception or valid existence until it has been delivered. So long as it remains in the hands of the maker or his agent it is inoperative. See *Norton Bills & N.* (3d ed.) 67, 136; *Rand. Com. Pap.* (2d ed.), §§ 216, 222, 689; *Dan. Neg. Inst.* (5th ed.), § 63; *Brind* v. *Hampshire* (1836), 1 *Mees. & W.* 365; *Marvin* v. *McCullum* (1822), 20 *Johns.* (*N. Y.*) 288, 289; *Gale* v. *Miller* (1874), 54 *N. Y.* 536, 538; *Crowell* v. *Osborne* (1881), 14 *Vroom* 335, 337; *Messmore* v. *Meyer* (1893), 27 *Id.* 31, 33. When, however, the note passes into the hands of a *bona fide* holder for value before maturity, it becomes a chose in action, and the reciprocal rights and duties of the parties to it are fixed. See *Norton Bills & N.* 136; *Rand. Com. Pap.*, § 224; *Chapman* v. *Cottrell* (1865), 13 *W. R.* 843; *McCutchen* v. *Kennedy* (1858), 3 *Dutcher* 230, 236, 238, *arguendo; Duncan, Sherman & Co.* v. *Gilbert* (1862), 5 *Id.* 521, 523; *Foley* v. *Emerald Brewing Co.* (1898), 32 *Vroom* 428, 429. It is to be observed that, for the protection of persons liable, delivery is, normally, to be in accordance with the purpose and intent of the parties to a note. Nevertheless, such a rule is subject to exceptions for the protection of *bona fide* holders for value. One of such exceptions was lately admitted in this court in the case of *Mechanics Bank* v. *Chardavoyne* (1903), 40 *Id.* 256, 258. Another exception obtains where the departure from the intent of the parties is one of mode only and affects no substantial right. In *Jackson* v. *First National Bank* (1880),

13 *Id.* 177, 179, following *Duncan, Sherman & Co.* v. *Gilbert,*
*supra,* this court held that "when a note was made for the
general purpose of accommodating the payee, the particular
mode in which it was made to subserve that end was of no
account to the maker. Whether the payee raised the money
upon it—which was the use indicated at the time—and with
the money paid off an old debt, or, without the circuity of a
new loan, applied the note directly to the satisfaction or se-
curing of the old debt, would be of no consequence to the de-
fendant. He lost no right by such diversion of the paper; nor
was he subjected to any additional risk."

(2) A promissory note may be the subject of valid transfer
and delivery by way of pledge or collateral security. See
*Rand. Com. Pap.* (2d ed.), § 794; *Jones Pledg.* (2d ed.), §§
80, 89; *Coleb. Coll. Sec.* (2d ed.), §§ 2, 3; *Rogers et al.* v.
*Sipley et al.* (1871), 6 *Vroom* 86. In *Duncan, Sherman & Co.*
v. *Gilbert* (1862), 5 *Dutcher* [133], 521, 526, 529, 530, two
promissory notes had been given without consideration by
Gilbert to Rowland with the understanding that they were to
be discounted at a certain bank for the latter's benefit, Gilbert
having no personal concern in the manner in which the money
obtained by the discount should be used. Rowland, however,
deposited the notes with Duncan, Sherman & Co. as collateral
security for the issue to himself of a foreign letter of credit.
On an action brought by the bankers against Gilbert, the
maker, it was held in this court that the liability incurred in
issuing the letter of credit was a sufficient consideration for the
note in their hands, and that, under the evidence and the in-
struction of the judge at the trial, there was no error in a re-
covery of the face of the notes.

(3) A party to a note who has received no value himself
may, nevertheless, become liable to a holder for value. See
2 *Pars. Bills & N.* 27; *Rand. Com. Pap.,* §§ 472, 692; *Dan.*
*Neg. Inst.* (5th ed.), § 790. This principle is applicable alike
to the maker and endorser of a note by way of accommodation.
So, also, an agent may by his express undertaking become
liable, as well as the principal, to third persons. See 1 *Am.*
*Lead. Cas.* (*H. & W.*)*635; *Story Ag.* (8th ed.), §§ 155, 157,

269. In *Chaddock* v. *Vanness* (1871), 6 *Vroom* 517, 519, 528, Chaddock, by his irregular endorsement was, under the proofs, held liable as a joint and several maker, although no value had been received by him. In like manner, in *Foley* v. *Emerald Brewing Co.* (1898), 32 *Id.* 428, 429, Foley would have been held liable as an endorser had it not been for lack of demand and notice. In legal theory, the holder of the note, in such cases, has parted with property or rights on the faith and credit of the party's name, and therefore the latter is answerable. See *Hayden* v. *Weldon* (1881), 14 *Id.* 128, 130. When there are several parties to a bill or note who have become such for the benefit of another, their *status,* not only as to the holder for value but *inter sese,* is, in the absence of relevant proof to the contrary, that which is shown by the paper upon which they have placed their names. See *Rand. Com. Pap.,* § 473; *Dan. Neg. Inst.,* § 703 (8); *Hill* v. *Buchanan* (1904), 42 *Vroom* 301, 302; *Coolidge* v. *Wiggin* (1873), 62 *Me.* 568, 572; *McGurk* v. *Huggett* (1885), 56 *Mich.* 187, 189; also, *Laubach* v. *Pursell* (1872), 6 *Vroom* 434, 435; *McDonald* v. *Magruder* (1830), 28 *U. S.* 470, 474, 477. Of two cases to the contrary, *MacDonald* v. *Whitfield* (1883), *L. R.,* 8 *App. Cas.* 733, 744, 746, turned upon a prior mutual agreement among the endorsers, and *Atwater* v. *Farthing* (1896), 118 *N. C.* 388, has confessedly no extraterritorial importance.

(4) A creditor, holding a pledge or collateral security, may, upon default, pursue any or all of his remedies at pleasure, whether by bringing an action on the principal contract or by proceeding to realize the value of the pledge or security. See *Jones Pledg.* (*2d ed.*), §§ 589, 663, 720; *Coleb. Coll. Sec.* (*2d ed.*), § 113. If the pledge or collateral security be commercial paper, the holder may bring either an action to enforce the principal debt or one to collect the pledged paper. See *Jones Pledg.,* §§ 664, 681; *Rand. Com. Pap.,* § 796; *Brick* ads. *Freehold National Banking Co.* (1875), 8 *Vroom* 307, 308; *Paine* v. *Furnas* (1875), 117 *Mass.* 308.

(5) A person other than the real debtor, but in somewise liable for the debt, may pay such debt to the creditor, and is thereupon entitled to subrogation to the rights of the creditor

in any pledge or collateral security held by the latter for the payment of the debt. See *Sheld. Subr.* (2d ed.), § 11; *Harr. Subr.*, §§ 1, 3; *Wilson* v. *Brown* (1861), 2 *Beas.* 277, 278; *Irick* v. *Black* (1864), 2 *C. E. Gr.* 189, 195; *Philadelphia and Reading Railroad Co.* v. *Little* (1886), 14 *Slew. Eq.* 519, 529. When two or more persons are thus liable for the debt of another, in succession, they will enjoy the right of subrogation successively, according to their contractual relations. See *Harr. Subr.*, §§ 381, 387; *Thompson, Administrator,* v. *Taylor* (1878), 12 *R. I.* 109, 110, 112. When the very right of subrogation is in question, it may be that the remedy is in equity, but when the right of subrogation itself is practically conceded, and there remains to be enforced only the right of realizing the value of the subject-matter, such right may, on proper occasion, be within the cognizance of a court of law. See *Sheld. Subr.* (2d ed.), § 1; *Sussex County Insurance Co.* v. *Woodruff* (1857), 2 *Dutcher* 541, 555, 559; *Paulin* v. *Kaighn* (1861), 5 *Id.* 480.

(6) When a person who has endorsed a note and parted with it again comes into possession of it in a *bona fide* manner, he may strike out his own endorsement and all subsequent thereto, and sue the prior parties upon the note. See *Middleton* v. *Griffith* (1894), 28 *Vroom* 442, 445.

Applying the principles of the foregoing cases and authorities to the facts of the case in hand, we perceive this:

While the promissory note of the Prudential Realty Corporation upon which the action was brought was in the possession of the corporation which made it, or in the hands of Deutz, a defendant below, or Polhemus, the plaintiff below, it had no valid existence, and was unenforceable. They were either the agents of the corporation or endorsers-to-be, by way of accommodation, for the procuring of money for corporation purposes. When, however, the paper passed into the possession of the Trenton Trust and Safe Deposit Company, as holders for value, before maturity, it had legal inception as a note, and became a chose in action, with all the qualities ordinarily incident thereto. Although it may have been the expectation, when this note was signed by Deutz, as president,

and Clickner, as treasurer, that the money for the purposes
of the corporation would be obtained in the way of ordinary
discount, nevertheless the change in the mode of use, by de-
livering the note as a pledge or collateral security, did not
invalidate it, inasmuch as the intended object of the use was
effectuated and there was no misappropriation. Furthermore,
under the circumstances of this case, no question could arise
as to the sum recoverable, such as was considered by this court
in *Allaire* v. *Hartshorne* (1847), 1 *Zab.* 665.

Upon the taking by the trust company of the joint and
several note of Deutz and Polhemus, and of the corporation
note delivered and pledged therewith, and the loan and ad-
vancement of the money in reliance thereon, Deutz and Pol-
hemus became at once liable to the trust company upon both
notes, whether the avails went into their own pockets or not,
because the trust company parted with value upon the faith
and credit of their names. Even if they were accommodation
endorsers of the pledged note, their *status* as endorsers was
presumptively fixed, not only as to the holder, but *inter sese,*
by the paper upon which they had successively placed their
names. The creditor trust company, holding, as they did,
both a principal contract and a pledge or security, were
allowed in law to sue upon the former or to realize at ma-
turity upon the latter, and they chose the former alternative.

When the money borrowed from the trust company by
Deutz and Polhemus was paid over by them to the realty
corporation, or applied to the uses of the corporation, as it
was their duty to do, they became, in effect, sureties for the
corporation, notwithstanding the unusual form of the transac-
tion, and on the corporation note became, in due order,
secondarily liable for the debt of the corporation. Therefore,
when the money borrowed became due to the trust company,
it was lawful for Polhemus to repay it and to take into his
possession not only the joint and several note, but the pledged
note as well, and thereupon he was fully subrogated to the
rights of the trust company in the pledged note, excepting, of
course, the right to sue himself and parties subsequent to
himself, if there had been any. When the note thus came

lawfully into Polhemus' possession by the joint act of himself and the trust company, he had a right to sue any or all parties prior to himself. This right the realty corporation conceded by their default in pleading. Deutz alone disputes it.

The plaintiff below having made out this case, the question recurs, Did he show himself entitled to go to the jury, or should the motion for a nonsuit have prevailed?

A nonsuit, when ordered by the judge at trial, is a judicial declaration that the plaintiff has failed to adduce evidence sufficient in law to maintain his case. See 1 *Chit. Arch. Pr.* (*12th Eng. ed.*) 444. In our courts it has been said that if the facts, clearly settled, or the indubious inferences to be drawn from them, show that the plaintiff is not entitled to recover, the court should nonsuit him. See *Aycrigg's Executors* v. *New York and Erie Railroad Co.* (1864), 1 *Vroom* 460, 461; *Furniture Company* v. *Board of Education* (1896), 29 *Id.* 646, 648. Again, it has been said that when a plaintiff has made out his case by *prima facie* proof, the court should put the defendant on his defence. See *Plotts* v. *Rosebury* (1859), 4 *Dutcher* 146, 147. The latter form of the rule has been further explained by the declaration that even though the evidence, either in the facts or in the conclusions, is open to fair debate, and leaves the mind in some doubt, the question is one for the jury. See *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey* (1875), 9 *Vroom* 525, 528, 529; *Consolidated Traction Co.* v. *Reeves* (1896), 29 *Id.* 573, 576, 577; also, *Synear* v. *Wharton* (1886), 19 *Id.* 97.

We think that the plaintiff, when he rested, had made out a *prima facie* case. That is to say, he had offered proofs sufficient to satisfy the judge, on the preliminary question of law, that there was evidence which the jury should be allowed to consider—evidence upon which, as the case then stood, the jury might properly find a verdict for him, upon whom the burden of proof lay. See *Wigm. Ev.*, §§ 2487, 2494 (2); *Baldwin* v. *Shannon* (1881), 14 *Vroom* 596, 602, 603; *Ryder* v. *Wombwell* (1868), *L. R.*, 4 *Exch.* 32, 38. The plaintiff below was entitled to go to the jury (*State* v. *Hardelein*

(1902), 169 *Mo.* 579, 585), and the motion for a nonsuit was rightly refused.

II. We now come to the second inquiry: Whether, when the defendant below abstained from offering any evidence in support of his plea, the plaintiff had already proved such facts as warranted the direction of a verdict in his favor.

In considering this question we are not to ask what would have been proper had the defendant done anything in the way of rebutting the plaintiff's case, or setting up an affirmative defence, either under general principles of law or under any provision of the Negotiable Instrument act of 1902. We are merely to inquire whether a direction was proper and lawful under the existing circumstances.

The defendant below put in his plea denying the truth of the declaration, and thus, so far as pleading goes, made his defence. He wholly failed, however, to support his plea by evidence going to the point in issue. He virtually rested his case on the evidence of the plaintiff.

We have already determined that the plaintiff, on his *prima facie* evidence, was entitled to go to the jury. That is to say, we agreed with Lord Chelmsford, in *Giblin* v. *McMullin* (1869), *L. R.,* 2 *P. C. App.* 331, 335, that when evidence is left to the jury, it is after this preliminary question is answered affirmatively by the presiding judge: "Is there any evidence upon which a jury may properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed?"

When, however, the defendant failed to meet the plaintiff's case, a further determination was and is proper, to the effect that the *prima facie* evidence became decisive of the issue. In *Kelly* v. *Jackson* (1832), 31 *U. S.* 622, 632, the Supreme Court of the United States, speaking by Mr. Justice Story, dealt with *prima facie* evidence, not rebutted, in these words:

"Is it not plain, then * * * that the plaintiff is entitled to recover. What is *prima facie* evidence of a fact? It is such as, in judgment of law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for the purpose. The jury are bound to consider it in that light, unless they are

invested with authority to disregard the rules of evidence by which the liberty and estate of every citizen are guarded and supported. No judge would hesitate to set aside their verdict and grant a new trial if, under such circumstances, without any rebutting evidence, they disregard it. It would be error on their part, which would require the remedial interposition of the court. In a legal sense, then, such *prima facie* evidence, in the absence of all controlling evidence or discrediting circumstances, becomes conclusive of the fact. That is, it should operate upon the minds of the jury as decisive to found their verdict as to the fact. Such we understand to be the clear principles of law on this subject."

And we may be permitted to add to the queries of Justice Story that if *prima facie* proofs, unrebutted, should operate upon the minds of the jurors as decisive, why should not the judge at a trial so instruct them?

In *Stark. Ev.* (*9th Am. ed., 4th Eng. ed.*) *819, the rule is thus stated: "*Prima facie* evidence is that which, not being inconsistent with the falsity of the hypothesis [that is, it might be proved to be untrue by the opponent], nevertheless raises such a degree of probability in its favor that it must prevail, if it be accredited by the jury, unless it be rebutted, or the contrary be proved."

In our own state it may be gathered, from *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey* (1875), 9 *Vroom* 525, 529; *Fifth Ward Savings Bank* v. *First National Bank* (1886), 19 *Id.* 513, 518; *Baumann* v. *Hamburg-American Packet Co.* (1901), 38 *Id.* 250, 252, 253, that when a plaintiff has fulfilled the burden of proof laid upon him, and no facts in evidence show that the plaintiff's testimony cannot be true, the court is warranted in directing a verdict in his favor. This may be simply putting in another form the rule that when no other verdict would be supported by the evidence, a direction is not erroneous. See *Anderson* v. *Central Railroad Co.* (1902), 39 *Id.* 269, 272.

The foregoing view might be strengthened by invoking the principle of natural presumptions in evidence, but it seems unnecessary to do this.

We find no legal error in the direction of a verdict for the plaintiff. The judgment of the Supreme Court must therefore be affirmed, and it is so ordered.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL, J.J.   14.

*For reversal*—None.

Submitted July 9, 1906—Decided March 4, 1907.