[Civ. No. 26315. Second Dist., Div. Two. Feb. 27, 1963.]

MEYER KOULISH COMPANY, INC., et al., Plaintiffs and Respondents, v. FRED J. CANNON et al., Defendants and Appellants.

420

422

Thomas P. Menzies and James O. White, Jr., for Defendants and Appellants.

Bolton, Groff & Dunne for Plaintiffs and Respondents.

ASHBURN, J.—Defendants Cannon-Schaefer Agency, a copartnership, and Fred J. Cannon, one of the partners, appeal from summary judgment rendered against them in favor of plaintiffs Meyer Koulish Co., Inc., and Arthur Nass, respectively.

Defendants were manufacturers' agents. Plaintiffs separately shipped certain jewelry from New York to Los Angeles on consignment to defendant Cannon-Schaefer Agency

and both defendants are charged with and admit receipt of the jewelry upon and pursuant to the terms and provisions of consignment memoranda sent them by plaintiffs. These memoranda place the risk of loss from all hazards upon defendants until the return of the jewelry to plaintiffs. On March 4, 1957, while Mr. Cannon was on a sales trip, his trunk which contained the consigned jewelry was stolen from the baggage room of the Southern Pacific station at Tucson, Arizona, while the trunk was still checked on the railroad claim ticket. The theft was not due to any fault or negligence on the part of Cannon.

The complaint alleged three causes of action on behalf of each plaintiff. The first cause of action was for breach of contract, based upon the memoranda. The second cause of action was based on alleged conversion, and the third cause of action upon alleged negligence. Prior to the time plaintiffs made their motion for summary judgment, they dismissed their causes of action based on alleged negligence and conversion, and thereafter relied solely on the cause of action based upon the memorandum receipts and the non-return of the merchandise.

In defense of the action defendants pleaded that plaintiffs were fully reimbursed for their loss by plaintiffs' insurance company and that thereby the claims of plaintiffs growing out of said losses have been fully paid and discharged, and that the said insurance company or companies do not have any greater equities in the premises than do the answering defendants, the property in question having been stolen without fault or neglect of the defendants.

Plaintiffs' attorney admitted in open court that this suit was actually a subrogation claim asserted by plaintiffs' insurance company in the names of plaintiffs.

Appellants' first contention on this appeal is that neither an insurance company nor a reimbursed insured can recover against anyone other than a wrongdoer who caused the loss. This affirmative defense was tried by the court, under the provisions of section 597, Code of Civil Procedure, prior to the trial of any other issue. The court ruled that this was not a proper defense.

"The principle on which the right of subrogation is founded applies in all cases in which one person, not a volunteer, pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have

been discharged by the latter.[1] The principle is applied in favor of those who are legally bound to pay debts of others, such as sureties, guarantors, and insurers." (46 Cal.Jur.2d, Subrogation, § 3, p. 69.) ■ *"Furthermore, the equitable doctrine of subrogation will be liberally applied to promote justice."*[2] (46 Cal.Jur.2d, Subrogation, § 3, p. 71.) (Italics added.)

■ "An insurer, on paying the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss. ■ The right of the insurer against the wrongdoer does not rest on any relation of contract or privity between them, but arises out of the nature of the contract of insurance as a contract of indemnity." (46 Cal.Jur.2d, Subrogation, § 4, p. 74.)

■ "[A]s between master and servant and their respective insurers, the master has a right of indemnification against the servant who has negligently caused an injury for which the master has had to pay, and principles of subrogation afford this same right to the master's insurer against that of the servant. *The principle involved may be applied as well where the party insured by the plaintiff has a right of indemnification against another by contract. The fact that the right arises from agreement rather than from tort is immaterial. In other words, one who has a superior equity growing out of contract may enforce it by way of subrogation though that contract was made with a third party."*[3] (46 Cal.Jur.2d, Subrogation, § 13, p. 99.) (Italics added.)

Appellants rely upon cases holding that an insurer upon a fidelity bond may not pursue subrogation from a bank for a loss sustained by the insured employer when the bank made payment on a check forged by an employee.

The cases of *Meyers* v. *Bank of America etc. Assn.*, 11 Cal.2d 92 [77 P.2d 1084]; *American Alliance Ins. Co.* v. *Capital Nat. Bank*, 75 Cal.App.2d 787 [171 P.2d 449];

---

[1]*Meyers* v. *Bank of America etc. Assn.*, 11 Cal.2d 92 [77 P.2d 1084]; *Stein* v. *Simpson*, 37 Cal.2d 79 [230 P.2d 816].

[2]The doctrine of subrogation has been held available to those who pay in the performance of a legal duty imposed by contract or rules of law. (*Fresno Investment Co.* v. *Brandon*, 79 Cal.App. 387 [249 P. 548]; *Fireman's Fund Indem. Co.* v. *State Comp. Ins. Fund*, 93 Cal.App.2d 408 [209 P.2d 55].)

[3]*American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d 192 [318 P.2d 84].

*Liberty Mut. Ins. Co.* v. *Kleinman,* 149 Cal.App.2d 404 [308 P.2d 347]; and *J. G. Boswell Co.* v. *W. D. Felder & Co.,* 103 Cal.App.2d 767 [230 P.2d 386], are cited by the appellants as authority to defeat the subrogation rights of the insurance company in the instant case. All the above mentioned cases involve fidelity bonds and are distinguishable from the present factual situation.

The true nature of subrogation in regard to insurance companies is set forth in the California case of *Offer* v. *Superior Court,* 194 Cal. 114 [228 P. 11], wherein the court states, at page 118: ''The principle upon which the right of subrogation is founded applies to cases of suretyship, but it is applied in all cases in which 'one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter.' (Sheldon on Subrogation, p. 2.) Thus insurance companies are given the right (*Id.,* p. 333 et seq.). This right of the insurer against the wrongdoer does not rest upon any relation of contract or of privity between them, but arises out of the nature of the contract of insurance as a contract of indemnity. The right arises independent of a provision in the contract of insurance which gives the insurer the right to recover damages from the person responsible for the loss.''

In the same case the court cites with approval the annotation in connection with *Mobile Insurance Co.* v. *Columbia & G. R.R. Co.,* 41 S.C. 408 [19 S.E. 858, 44 Am. St. Rep. 725], which annotation states, at page 732 [44 Am. St. Rep.]: ''So, when one person discharges an obligation which primarily rests upon another, he should be subrogated to the place of the injured party or the creditor in respect to the party who is primarily liable. The fact that the latter has not been guilty of any negligence or wrongdoing will not enable him to escape the demands of the party insisting upon the right to subrogation.''

When the insurer reimbursed the plaintiffs Koulish and Nass for their loss, it thereby became subrogated to all of the rights of the plaintiffs in relation to this loss. The fact that the right was a contractual one, rather than a right founded in tort, in no way affects the result that after payment by the insurer the right of recovery which originally vested in the insured now vests in the insurer.

*American Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.

App.2d 192 [318 P.2d 84], contains pertinent language. The court, after deciding that the original leasing agreement did not contain an indemnification clause in favor of the lessor, said: "If Republic had a right to indemnification from Kaufman the *Continental* case, *supra,* would be controlling. The fact that the right arose from agreement rather than tort would be immaterial. One who has a superior equity growing out of contract may enforce it by way of subrogation although that contract was made with a third party." (P. 196.) (Citations omitted.)

The case of *United States Fidelity & Guaranty Co.* v. *Slifkin* (N.D.Ala. 1961) 200 F. Supp. 563, involved facts similar to those at bar. Defendant Slifkin, a diamond merchant, received diamonds on consignment accompanied by a memorandum which recited: "Risks of loss or damage from all hazards of any kind, with or without negligence on your part is [*sic*] yours." (P. 567.) The diamond merchant was robbed of the consigned merchandise by third parties. The consignors were compensated for the loss by insurance. The insurance companies sued the merchant on the theory that they were subrogated to the consignors' rights under the contracts whereby the merchant agreed to be liable for any loss. The court noted that the diamond merchant's personal liability to the consignors must be grounded on his contractual enlargement of his common-law liability, stating on page 569: "And if the consignors' insurers have any right to subrogation, it must be to this right of their insureds."

The court in the *Slifkin* case cited with approval the case of *Chicago, St. L. & N.O.R.R. Co.* v. *Pullman Southern Car Co.,* 139 U.S. 79 [11 S. Ct. 490, 35 L. Ed. 97] and held that the consignors' insurers were entitled to subrogation to the rights of their insureds as against Slifkin.

The case of *Chicago St. L & N.O.R.R. Co.* v. *Pullman Southern Car Co., supra,* involved an action brought by a lessor against a lessee for damages caused when leased railroad cars were destroyed by fire from an unknown cause. The defendant railroad company had agreed to repair all damages of every kind occasioned by accident or casualty. The railroad company urged that the plaintiff had already been reimbursed by its insurance carrier for the loss and hence it could not maintain the action. The court held that the insurance companies of the lessor were subrogated to the rights of their insured and could in the name of the

insured maintain an action against the railroad company for indemnity. The court further held that the liability of the railroad company was primary and that of the insurer secondary in order of ultimate liability.

In *F.H. Vahlsing, Inc.* v. *Hartford Fire Ins. Co.* (Tex. Civ. App.) 108 S.W.2d 947, the Texas Supreme Court followed the decision in the *Pullman* case, *supra,* the court saying on page 950: "We construe this [i.e., the lease agreement] to mean an agreement to pay. The fire insurance contract, as between the insurance company and the railroad company, provided that the railroad company might be required to assign to the insurance company whatever right it might have against a third party upon the payment of the loss by the insurance company. The insurance company paid the loss to the railroad company and it in turn delivered to the insurance company an assignment of whatever cause of action it had as against the appellant. It then follows that, if the railroad company would be entitled to recover for the loss as against the appellant, the insurance company in this action stands in its shoes and would also be entitled to recover." (Citations omitted.)

Both the *Pullman* and the *Vahlsing* cases are cited with approval in the case of *Atlantic Mutual Insurance Co.* v. *Cooney* (9th Cir. 1962) 303 F.2d 253. In that case the court was faced with the question of whether the insurer of a bailor can recover from a bailee who has expressly agreed to be absolutely liable for the merchandise entrusted to him. The court said, at pages 259, 260: "This 'right of subrogation is not limited to cases where the liability of the third person is founded in tort; but any right of insured to indemnity, including a right based on contract, will pass to insurer on payment of the loss'. 46 C.J.S., Insurance, § 1211(a) (1), pp. 176, 178. . . .

"The agreement in the *Pullman* case would seem to have created a bailment of the sleeping cars; if not, a relationship existed which was very close to that of bailor and bailee. '(Bailment) may be comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be, . . . The object of bailment may be as various as the

transactions of men.' 8 C.J.S., Bailments, § 1, pp. 222, 225.'' (P. 260.)

The jewelry in the instant case well may be said to come under the definition of bailment as given above, and thereby to come within the rule of the *Pullman* and *Cooney* cases, *supra.*

*Cooney* also quotes from *In re Future Manufacturing Coop.* (N.D. Cal.) 165 F. Supp. 111, at page 113: '' 'Thus the prevailing rule is that an insurer upon indemnifying an insured mortgagee for the loss of his interest in destroyed mortgaged property is entitled to be subrogated to the mortgagee's right to enforce payment of the mortgagor's debt. Shippers' insurers, upon payment for goods lost or damaged in transit, have usually been subrogated to the shippers' contractual rights against the carrier. Insurers of leased property, upon paying the lessor for loss or damage to the property, are ordinarily subrogated to his rights against a lessee who has contracted to keep the property in good repair or to indemnify the lessor for loss or damage.' '' The court concludes: ''Cooney's agreement to accept full liability as an insurer for the Exchange property entrusted to its care and custody brings the instant case within the ambit of the rules permitting subrogation.'' (P. 261.)

Appellants herein rely upon cases holding that an insurer upon a bond indemnifying an employer against defalcations of an employee may not recover by way of subrogation from the employer's bank for a loss sustained by the employer arising from the bank's payment of checks forged by the employee. However, in one of these cases, *American Surety Co.* v. *Bank of California* (9th Cir. 1943) 133 F.2d 160, 164, the court recognized that this rule has no application where the third party has accepted primary liability by agreement. In distinguishing *Chicago, St. L. & N.O.R.R.* v. *Pullman Southern Car Co., supra,* the court said, in part: ''In the case at bar there was no express contract on the part of Bank in favor of Interior as there was on the part of the railroad in the *Pullman* case. Furthermore, there was no primary liability on the part of a third person, the bank, for the loss; the primary liability rested on the employee Crowe. Therefore, the *Pullman* case is not authority in favor of Insurers herein.''

Here appellants accepted primary liability by written agreement, bringing this case within the rule of the *Pullman* and *Cooney* cases rather than the suretyship rule followed

in *American Surety Co.* v. *Bank of California, supra,* 133 F.2d 160, and *Meyers* v. *Bank of America etc. Assn., supra,* 11 Cal.2d 92.

"It is true that subrogation is an equitable doctrine, and in the suretyship and vendor-vendee cases the courts have relied upon equitable considerations in denying subrogation." (*Atlantic Mutual Insurance Co.* v. *Cooney, supra, p.* 261.)

 Appellants were parties to an express contract whereby they assumed responsibility for the loss of the goods of respondents. They thereby accepted primary liability and it cannot be said that appellants stand on equal footing with the insurance company. The equities in this matter do not balance but preponderate in favor of the insurer of the bailor.

 The trial court properly ruled that defendants' first affirmative defense was not a proper defense to plaintiffs' suit for breach of contract and that the insurance company was properly subrogated to plaintiffs' contract claim against defendants.

Defendants also contend that the provisions of section 597, Code of Civil Procedure, were improperly invoked.

An order was granted for a special trial, pursuant to plaintiffs' motion under section 597 of the Code of Civil Procedure, as to the special defense of whether or not the plaintiffs had any rights against the defendants in view of allegedly having been recompensed fully by way of policies of insurance covering the plaintiffs for the alleged losses which were the subject matter of the actions, and whether the insurance company or companies which so paid the plaintiffs, had a greater equity and right of recovery than did the answering defendants in view of the allegation that the property, which was in the defendants' care, custody and control, was stolen, lost or otherwise disappeared without fault on the part of the defendants.

Section 597 of the Code of Civil Procedure provides: "When the answer pleads . . . , or sets up any other defense *not involving the merits of the plaintiff's cause of action* but constituting a bar or ground of abatement to the prosecution thereof, the court may, upon the motion of either party, proceed to the trial of such special defense or defenses before the trial of any other issue in the case. . . ." (Italics added.)

A definition of the word "merits" is found in 57 Corpus Juris Secundum, page 1070: "If taken in its ordinary

acceptation, the word 'merits' would mean the abstract justice of the case, without regard to any technical or arbitrary rules of law. However, it has been said that a better definition would be to consider it as meaning the combined questions of law and fact presented by the pleadings of the case. . . . As a technical legal term, 'merits' is defined as meaning the various elements which enter into or qualify the plaintiff's right to the relief sought; matter of substance, as distinguished from matter of form or technicality. . . .''

Since it was established without controversy prior to trial that this case is one of subrogation, the determination of plaintiffs' right to pursue was not merely defensive matter but definitely involved the merits of the causes of action alleged by the plaintiffs.

It was therefore improper for the trial court to have ordered a special trial under section 597, but this in and of itself would not constitute reversible error. The California Constitution provides, in article VI, section $4\frac{1}{2}$, that no judgment may be set aside or new trial granted for error that does not, in the opinion of the reviewing court, result in a miscarriage of justice.

The trial court has the power to regulate the order of proof under section 2042 of the Code of Civil Procedure, and section 597 does not add a great deal to this power. (*Booth* v. *Bond,* 56 Cal.App.2d 153, 156 [132 P.2d 520].) In view of the fact that the trial court could in its discretion under section 2042 regulate the order of proof so that the issues involved in defendants' affirmative defense would be tried first, and the fact that this court has determined (*supra*) that the defense was not a bar to plaintiffs' cause of action, the opinion of this court is that there was no miscarriage of justice due to this error.

Defendants also contend that error was committed in the trial of the special defense, because this was done after an improper denial of defendants' motion for a trial by jury. It was only as to the trial of the equitable defense that the court denied defendants' motion for a trial by jury.

The right of trial by jury in civil actions is not an absolute right that extends to all cases but one that extends only to those cases where a right to trial by jury would have existed at common law at the time the California Constitution was adopted. (*People* v. *One* 1941 *Chevrolet Coupe,* 37 Cal.2d 283 [231 P.2d 832].) It is well settled in California that there is no right to a jury trial in civil

actions that are equitable in nature. It is only when issues of law are involved that the right to a trial by jury attaches. (*Campbell* v. *Rustigian,* 60 Cal.App.2d 500 [140 P.2d 998]; *Olson* v. *Foster,* 42 Cal.App.2d 493 [109 P.2d 388].)

In *Asamen* v. *Thompson,* 55 Cal.App.2d 661 [131 P.2d 841], the court in dealing with the problem of a right to a jury trial when the defendant has interposed equitable and legal defenses to the complaint states at page 672: "It has been stated by the Supreme Court in many cases that when a defendant interposes equitable and legal defenses to the complaint, the proper rule of procedure for the court is to hear and dispose of the equitable defense before proceeding to try the issues of law. [Citations.]"

That the defense offered in the case at bar is of a purely equitable character in its essentials is discernible from the case of *Offer* v. *Superior Court, supra,* 194 Cal. 114, wherein the court stated at page 121: "In *Polhemus* v. *Prudential Realty Corp.,* 74 N.J.L. 570 [67 A. 303], it was held that although when the right of subrogation is in question the remedy is in equity, when the right itself is conceded, and there remains to be enforced only the right of realizing the value of the subject matter, such right may be within the cognizance of a court of law. (See also, *Baker* v. *American Surety Co.,* 181 Iowa 634 [159 N.W. 1044]; *Black* v. *Chicago, G.W.R.R. Co.,* 187 Iowa 904 [174 N.W. 774].)" Defendant was not entitled to a trial by jury as to the special defense.

Defendants allege that the absence of findings of fact and conclusions of law requires reversal of the judgment. This contention is not well taken.

The reviewing court in the case of *Crofoot* v. *Crofoot,* 132 Cal.App.2d 794 [283 P.2d 283], indicates the proper procedure to be followed upon completion of the trial of the special defense and a ruling in favor of defendant by stating, at page 798: "[T]he proper procedure was to enter a minute order to that effect, proceed to trial on the third and fourth causes of action, make findings of fact and conclusions of law on all issues and render judgment accordingly."

The court orally ruled that the affirmative defense was not well taken, entered a minute order to that effect, and proceeded to trial of the remaining issues. Plaintiffs moved to

strike all their causes of action except the two sounding in breach of contract. The court granted said motion. Plaintiffs then moved for a summary judgment.

The fact that a summary judgment was granted to the plaintiffs and therefore there was no trial of a question of fact on the other issues cannot be said to place upon the trial court the necessity of making findings. ▮▮▮ A summary judgment does not contemplate or connote findings of fact; there is no power in the court to make them (*Weichman* v. *Vetri*, 100 Cal.App.2d 177, 180 [223 P.2d 288]; *Family Service Agency of Santa Barbara* v. *Ames*, 166 Cal. App.2d 344, 346 [333 P.2d 142].)

Defendants' contention in regard to plaintiffs' alleged waiver of their right to recover from defendants for breach of contract is unfounded. ▮▮▮ Waiver is an affirmative defense that must be pleaded with specificity and separately stated. In pleading waiver the defendant must set forth the facts upon which he bases his claim of waiver. This was not done. (*Calhoun* v. *Davis*, 121 Cal.App.2d 167 [262 P.2d 620]; *Williams* v. *Marshall*, 37 Cal.2d 445 [235 P.2d 372].)

▮▮▮ The parties have agreed that certain items of merchandise described in exhibits A and B to plaintiffs' complaint were delivered to defendants; that receipt of the jewelry was pursuant to the conditions and provisions set forth upon the consignment memorandum; that the plaintiffs were notified by said answering defendants that the jewelry had been lost, stolen, or otherwise disappeared; that those items of jewelry that were in the care, custody and control of the defendants pursuant to the consignment memoranda, attached as exhibits A and B to plaintiffs' complaint, were not paid for or returned to the plaintiffs; that at the time of delivery to the named defendants and acceptance thereof by them of said items of jewelry, said items were in good condition and free from damage or defect and were of the reasonable value of $6,685.16. All the necessary requisites for the proof of breach of contract are admitted by the parties; therefore, there was no actual triable issue of fact. Granting plaintiffs' motion for summary judgment was proper.

Defendants contend that the amount of damages was in dispute and this issue should go to the jury.

▮▮▮ Defendants admit, in the "matter of fact agreed upon" as set forth in the pretrial conference order, that

the value of the jewelry which was not paid for or returned was $6,685.16. Defendants admit, and it is well settled law, that the pretrial order will control inconsistent pleadings. (California Rules of Court, rule 216*; *Baird* v. *Hodson,* 161 Cal.App.2d 687 [327 P.2d 215].) The fact that the pretrial order was supplemented so as to include a "contention" that six items of jewelry, with a value of $1,460, had been returned would not change or affect the "agreed value" of the jewelry not returned; with reference to the "contentions" as distinguished from "matters of fact agreed upon," the matters of fact agreed upon would control.

However, the judgment for plaintiff Nass was $5,790.16, which was $900 more than the prayer for damages in his complaint. The trial judge erroneously concluded that the "agreed value" of $6,685.16[4] was in conflict with plaintiffs' prayer for damages and that the pretrial order would thereby control. There is no conflict here. The "matters of fact agreed upon" simply state the value of the jewelry when received by defendants, not that plaintiffs were damaged in that amount. ▇ The court stated, in *Taylor* v. *S. & M. Lamp Co.,* 190 Cal.App.2d 700 [12 Cal.Rptr. 323], at p. 707: "One of the basic purposes of pretrial is to clarify and define the issues, and in that connection, to examine the pleadings for necessary amendments. ▇ If, as in this case, the question of the sufficiency of a pleading is raised at a pretrial conference it should be resolved before the pretrial order is signed and the case set for trial. ▇ Among the ways it may be resolved are: (1) by the voluntary withdrawal as an issue, (2) by directing an appropriate amendment, and continuing the pretrial conference until the pleading issue is resolved, (3) by reformulating the issue at the pretrial conference and setting it forth in the pretrial order, or (4) by a ruling that no issue is raised with respect to the allegations in question."

---

[4]Matters of fact agreed upon in pretrial conference order: ". . . 5. That those items of jewelry that were in the care, custody and control of the defendants, pursuant to the consignment memorandums plead as Exhibits to plaintiffs' complaint, were not paid for or returned to the plaintiffs. 6. That at time of delivery to the named defendants and acceptance thereof by them of said items of jewelry, said items were in good condition and free from damage or defects and were of the reasonable value of $6,685.16."

*Formerly Rules for the Superior Courts, rule 8.8.

Here, none of the four procedures was followed, for neither was the complaint amended nor was the issue of damages reformed and set forth in the pretrial order. Therefore, plaintiff is limited in his recovery to that amount prayed for in his complaint. In the absence of an amendment to conform to proof, the court may not properly award plaintiff damages in excess of the amount of damages which he claims to have sustained. (*Meisner* v. *McIntosh*, 205 Cal. 11 [269 P. 612] ; *Frost* v. *Mighetto,* 22 Cal. App.2d 612 [71 P.2d 932] ; cf. *Singleton* v. *Perry,* 45 Cal.2d 489 [289 P.2d 794].)

The judgment is affirmed as to plaintiff Koulish, but as to plaintiff Nass the judgment is hereby modified so as to conform with the amount prayed for in his complaint, to wit, $4,890.16, plus interest. Appeal from order granting summary judgment dismissed. (*Chilson* v. *P.G. Industries,* 174 Cal.App.2d 613, 616 [344 P.2d 868].)

Fox, P. J., and Herndon, J., concurred.