[No. B091546. Second Dist., Div. One. Jan. 31, 1997.]

FIREMAN'S FUND INSURANCE COMPANY, Plaintiff and Respondent,
v.
WILSHIRE FILM VENTURES, INC., Defendant and Appellant.

## COUNSEL

Ward, Kroll & Jampol and Alan R. Jampol for Defendant and Appellant.

Stephen Youngerman and Ronald P. Kaplan for Plaintiff and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—Wilshire Film Ventures, Inc., leased camera equipment from Leonetti Company under a lease that obligated Wilshire to return the equipment by a specified date or pay its full value.[1] Wilshire stored the equipment in its own truck and, with Leonetti's permission, parked the truck in Leonetti's locked storage yard. Through no fault of Wilshire, burglars broke into the van and stole the equipment. When Wilshire refused to pay Leonetti for the stolen equipment, Leonetti submitted a claim to its insurer, Fireman's Fund Insurance Company. Fireman's Fund paid the claim, then sued Wilshire for equitable subrogation, claiming Wilshire had breached its contract with Leonetti and that Fireman's Fund, having paid Wilshire's obligation, now stood in Leonetti's shoes and could recover from Wilshire. A jury agreed with Fireman's Fund and awarded it $69,902.63. Wilshire appeals. We affirm.

### DISCUSSION

 Wilshire contends Fireman's Fund was not entitled to pursue a claim for equitable subrogation. We disagree.

 When an insurer seeks equitable subrogation after it has paid a claim for an insured, the insurer must establish that (1) the insured suffered a loss for which the defendant is liable, *either* (a) because the defendant is a wrongdoer whose act or omission caused the loss *or* (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer;

---

[1]More specifically, Wilshire agreed "to pay full replacement costs . . . for any equipment lost, destroyed, damaged beyond repair, or for any reason whatsoever, where [Wilshire] has failed to deliver such equipment in good condition to [Leonetti]."

(2) the insurer has compensated the insured for the loss for which the defendant is liable; (3) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted had it not been compensated by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (5) justice requires that the loss should be shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount paid to its insured. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 509 [64 Cal.Rptr. 187]; *Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 101 [77 P.2d 1084].)

 Wilshire concedes all but one point, contending only that the fifth factor (the insurer's superior position) is not satisfied in this case. This is so, according to Wilshire, because *Patent Scaffolding Co.* v. *William Simpson Constr. Co.*, *supra*, 256 Cal.App.2d at page 514 holds, among other things, that when "two parties are contractually bound by *independent contracts to indemnify the same person for the same loss*, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss." (*Ibid.,* italics added.) It follows, according to Wilshire, that because it was not responsible for the burglary, it stands in the same position as Fireman's Fund, and Fireman's Fund does not have an equitable subrogation right against Wilshire. Wilshire misses the point.

In *Patent Scaffolding Co.* v. *William Simpson Constr. Co.*, *supra*, 256 Cal.App.2d 506, the court's reference to "independent contracts to indemnify the same person for the same loss" aptly described facts of that case, but the description does not fit our facts. Patent Scaffolding Co., a sub-contractor, was retained by William Simpson Construction Co., a general contractor, to erect scaffolding for use during a construction project. Under their subcontract, Simpson was obligated to (but did not) purchase insurance to protect Patent's equipment and materials from damage caused by fire. During the course of construction, a fire of unknown origin destroyed some of Patent's equipment and materials, after which Patent demanded reimbursement from Simpson. When no payment was forthcoming, Patent obtained reimbursement from its own insurer, and the insurer then sued Simpson for subrogation. (*Id.* at pp. 507-509.)

On those facts, Division Five of our court refused to permit the insurer to recover from Simpson, focusing its analysis on the absence of what the court described as a "causal connection" between the breach of the subcontract

(the failure to obtain insurance to protect Patent) and the payment by Patent's own insurer on its policy. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra*, 256 Cal.App.2d at pp. 514-515.) We would have put it differently, by emphasizing that the obligations in *Patent Scaffolding* involved independent contracts to indemnify the same loss, which were equal because both were promises to obtain insurance to cover damage from fire. With our emphasis, the distinction between our case and *Patent Scaffolding* becomes apparent—although we have *two independent contracts*, they are *not* to "indemnify the same loss." Wilshire's promise was to return the equipment or pay for it, not to provide insurance coverage, and the only party providing insurance was Fireman's Fund.

The problem with *Patent Scaffolding*'s "causal connection" approach is that it appears to preclude recovery in any case in which the defendant's negligence is not the cause of the insured's loss, a result inconsistent with the rule articulated in *Patent Scaffolding* itself and the cases on which it relies. As noted at the outset, the first element of a subrogation claim is satisfied if the insurer proves that the insured suffered a loss for which the defendant is liable *either* (a) because the defendant is a wrongdoer whose act or omission caused the loss *or* (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra*, 256 Cal.App.2d at p. 509.) *Patent Scaffolding* does not explain how it is that a defendant who is not the wrongdoer can (other than by a breach of contract) nevertheless be the "cause" of the insured's loss, and we confess that we are unable to imagine a scenario that would meet Division Five's test. Conversely, there is ample authority and logic for Division Five's conclusion that, so long as the defendant was legally responsible to the insured for the loss caused by the wrongdoer (as was Wilshire in our case), the first element is satisfied (*Meyers* v. *Bank of America etc. Assn., supra*, 11 Cal.2d at p. 102) and the question then to be answered is whether, absent any wrongdoing, the equities favor the insurer or the defendant. (*Ibid.*)

In *Patent Scaffolding*, Division Five refused to follow an earlier decision by Division Two of our court, *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419 [28 Cal.Rptr. 757], because Division Two had not discussed the "causal connection" supporting subrogation liability. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra*, 256 Cal.App.2d at p. 515.) In our view, Division Two's case—with facts analytically indistinguishable from those now before us—reaches the right result for the right reasons. In *Meyer Koulish*, a manufacturer of jewelry consigned some of its jewelry to the defendant under an agreement that imposed all risk of loss on the defendant

until the jewelry was returned to the manufacturer. Through no fault of the defendant, the jewelry was stolen. When the defendant refused to pay for the jewelry, the manufacturer was paid by its insurer, and the insurer then sued the defendant for subrogation. (*Meyer Koulish Co.* v. *Cannon, supra,* 213 Cal.App.2d at p. 423.)

Division Two held that the parties had by their agreement made the defendant's liability primary, explaining that the "true nature of subrogation" is that " 'it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." . . . [¶] The fact that the latter has not been guilty of any negligence or wrongdoing will not enable him to escape the demands of the party insisting upon the right of subrogation.' " (*Meyer Koulish Co.* v. *Cannon, supra,* 213 Cal.App.2d at p. 425.)

So viewed, it becomes apparent that the result (if not the reasoning) in *Patent Scaffolding* and the result in *Meyer Koulish* are consistent with the rule announced by our Supreme Court in *Meyers* v. *Bank of America etc. Assn., supra,* 11 Cal.2d 92—that the right to maintain an action for subrogation "involves a consideration of, and must necessarily depend upon the respective equities of the parties." (*Id.* at p. 102.)[2] Applied to the facts before Division Two in *Meyer Koulish Co.* v. *Cannon, supra,* 213 Cal.App.2d 419, the equities permitted recovery (because the consignment contract was primary, the consignee having promised to return or pay for the jewelry), but applied to the facts before Division Five in *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d 506, the equities did not (because the general and the subcontract promised the same thing, to provide insurance).

It follows that, on our facts, Fireman's Fund's position is superior to Wilshire's position. Wilshire was obligated to return the equipment or pay

---

[2]*Patent Scaffolding* characterizes *Meyers* v. *Bank of America etc. Assn., supra,* 11 Cal.2d 92, as holding that the defendant in *Meyers* was not a wrongdoer and that, therefore, the plaintiff (a bonding company) had no superior equities. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 514.) That is not how we read *Meyers,* which cites *Northern Trust Co.* v. *Consolidated Elevator Co.* (1919) 142 Minn. 132 [171 N.W. 265, 4 A.L.R. 510] in support of its holding. (*Meyers* v. *Bank of America etc. Assn., supra,* 11 Cal.2d at pp. 99, 103.) The *Northern Trust Co.* case, quoted at length by our Supreme Court, held that the " 'right to recover *from a third person* does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute—as to the former, it is conditional.' " (*Northern Trust Co.* v. *Consolidated Elevator Co., supra,* 171 N.W. at p. 268, as quoted in *Meyers* v. *Bank of America etc. Assn., supra,* 11 Cal.2d at p. 99, italics added by *Meyers* court.)

for it, not merely to provide insurance coverage. Wilshire did neither, and is therefore in breach of its contractual obligation. Fireman's Fund, on the other hand, fully performed its contractual obligation by paying its insured the benefits due under its contract. As between these parties, therefore, the equities are with Fireman's Fund and it is entitled to recover from Wilshire. (*Meyers* v. *Bank of America etc. Assn.*, *supra*, 11 Cal.2d 92; see also *Hartford Acc. & Indem. Co.* v. *Bank of America* (1963) 220 Cal.App.2d 545, 558 [34 Cal.Rptr. 23] [there is no facile formula for determining superiority of equities].)[3]

## DISPOSITION

The judgment is affirmed. Fireman's Fund is entitled to its costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

---

[3]A third analytical approach was adopted by Division Seven of our court in *Fireman's Fund Ins. Co.* v. *Morse Signal Devices* (1984) 151 Cal.App.3d 681, 686-688 [198 Cal.Rptr. 756]. There, an insurer sued a group of alarm companies for subrogation, alleging that it was entitled to reimbursement from the defendants because their alarms had failed to prevent burglaries at several properties owned by the carrier's insureds, as a result of which the carrier had to pay policy benefits. Demurrers were sustained without leave to amend and the carrier appealed. Division Seven affirmed, analyzing the issue by looking to the "reasonable expectations" of the parties to the alarm service contracts, finding those expectations had not been frustrated because the alarm companies had not represented that their alarms made the insured premises absolutely secure, and that it was precisely for this reason that the insureds had procured insurance for the very losses that were suffered. On our facts, the availability of insurance is a two-edged sword—because it also invites collusion between the insured and the party with whom it has contracted for the return of its property. Although there is *nothing* to suggest any impropriety in our case, we can easily envision a lessee's offer to pay a higher rate on the next lease in exchange for the lessor's forgiveness of the lessee's obligation to pay for stolen property where, as here, the lessor can obtain full payment from an insurer.