Filed 8/26/13  Shephard Mechanical Contractors v. Circo System Balance  CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHEPHARD MECHANICAL CONTRACTORS, INC., | C069614 |
| Cross-complainant, | (Super. Ct. No. 05AS00595) |
| v. | |
| CIRCO SYSTEM BALANCE, INC., | |
| Cross-defendant and Appellant, | |
| ZURICH NORTH AMERICA, | |
| Intervener and Respondent. | |

This dispute arises out of the construction of an Embassy Suites Hotel.  When the owner of the hotel sued the general contractor for construction defects, the general contractor cross-complained against various subcontractors, including J & A Mechanical, Inc., the HVAC (heating, ventilation, and air conditioning) subcontractor.  J & A Mechanical then filed a cross-complaint against Shephard Mechanical Contractors, Inc. (Shephard), the second tier HVAC subcontractor.  Shephard, in turn, cross-complained against Circo System Balance, Inc. (Circo), the third tier HVAC subcontractor.  Shephard

1

sought indemnity and a defense from Circo, pursuant to the subcontract agreement that contained an indemnity provision and a promise to defend.

After Circo refused the tender of defense, Zurich North America (Zurich), Shephard's insurer, paid for Shephard's defense and paid the $50,000 settlement of claims against Shephard. Zurich then intervened in Shephard's cross-complaint against Circo for indemnity on a theory of equitable subrogation. Zurich moved for, and the trial court granted, summary adjudication on the issue of Circo's duty to defend and indemnify Shephard.

Circo appeals from the judgment in favor of Zurich. Circo attacks every element of Zurich's subrogation claim against Circo. The gist of Circo's appeal is that Circo had no duty to defend or provide indemnification because Zurich failed to prove the claims against Shephard arose out of Circo's work or that Circo was negligent at all.

Although poorly presented, Circo's papers in opposition to Zurich's motion for summary adjudication reveal a triable issue of material fact. Circo's contractual duty to indemnify Shephard was limited; Circo had no duty to indemnify Shephard if the claims arose from the sole negligence of the owner or Shephard, or employees or contractors directly responsible to them, or "for defects in design furnished by such persons." To negate the first exception, Zurich presented evidence that Circo's work fell below the standard of care, but Zurich did not address the second exception--that of faulty design. In opposition to the motion for summary adjudication, Circo presented excerpts from the deposition of an expert who claimed the problems with air flow to the hotel rooms was *due to faulty design*. Accordingly, there is a triable issue of fact as to whether the claims were due to a design defect and thus not covered by the indemnity agreement.

A party may move for summary adjudication as to one or more issues of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) Zurich, however, did not move for summary adjudication separately as to the issues of duty to defend and duty to indemnify; these separate duties were addressed together. Thus, the motion for summary adjudication

2

failed if there was a triable issue of material fact as to either duty. Since there is a triable issue of material fact as to Circo's duty to indemnify due to Circo's presentation of evidence of design defect, the trial court erred in granting the motion. Accordingly, we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Project and HVAC Subcontracts*

In 1999, Sacramento Hotel Partners, LLC (SHP) entered into a construction contract with Swinerton Builders, Inc. (Swinerton) for the construction of an Embassy Suites Hotel in Sacramento. Swinerton entered into a subcontract agreement with J & A Mechanical for "Design/Build, Plumbing, HVAC & Controls." J & A Mechanical entered into a subcontract with Shephard. Under this agreement, Shephard would fabricate and install supply, return and exhaust systems; furnish and install flues, vents, grills, louvers, and dampers; and provide or install ductwork, fans, air balance, and other items.

*Circo's Contract with Shephard*

Shephard subcontracted with Circo for "Testing, Adjusting and Balance as specified on mechanical drawings." The contract identified the engineering firm that prepared the plans and specification. It stated, "Sub-contractor having thoroughly informed himself of the conditions surrounding the work by thorough examination and comparison of all plans and specifications insofar as they relate in any way to the work to be undertaken herein, agrees to furnish all material, labor, supervision, tools, appliances, permits and certificates necessary to construct and complete in a workmanlike manner, in strict accordance with said plans and specifications including the general and special conditions and details illustrative thereof, as approved by the Contractor."

3

Circo's work consisted of testing, adjusting, and balancing the HVAC systems in each room of the hotel and the water systems on the property as specified in the mechanical drawings provided to Circo.[1]

Circo's contract with Shephard had an indemnity provision in Section B. That provision provided, in part, that, except as prohibited by the public policy of California,[2] "Subcontractor shall indemnify and save harmless Owner and Contractor, including their officers, agents, employees, affiliates, parents and subsidiaries, and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorney fees, losses or liability in law or in equity of every kind and nature whatsoever ('claims') arising out of or in connection with Subcontractor's operations to be performed under the Agreement for, but not limited to: (a) Personal injury, . . . and/or damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by a party indemnified hereunder; . . ."

"The indemnification provisions of (a) through (g) above shall extend to claims occurring after this Agreement is terminated as well as while it is in force. Such

---

[1] Balancing the air requires measuring the amount of air coming from each outlet and adjusting it so the number of cubic feet per minute (CFM) is within the range of airflow designated by the designers. Water balance refers to the water system used to provide cooling and heat.

[2] With certain exceptions, any agreement affecting a construction contract that purports to indemnify the promisee against liability for damages arising from the sole negligence or willful misconduct of the promisee or his agents or independent contractors, or for design defects furnished by these persons, is against public policy and is void and unenforceable. (Civ. Code, § 2782, subd. (a).) The indemnity agreement at issue here exempts indemnity for these damages.

4

indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor for claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or for defects in design furnished by such persons."

The contract further required Circo, as Subcontractor to:

"(a) At Subcontractor's own cost, expense, and risk, defend all claims as defined in B that may be brought or instituted by third persons, . . .

"(b) Pay and satisfy any judgment or decree that may be rendered against Contractor or Owner or their agents or employees, or any of them, arising out of any such claim, and /or

"(c) Reimburse Contractor or Owner or their agents or employees for any and all legal expenses incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section B."

The contract also required Circo to procure and maintain certain insurance.

*The Litigation*

A few years after construction commenced, there was litigation between SHP and Swinerton. A settlement agreement resolved this litigation. Subsequently, in 2005, SHP brought suit against Swinerton for breach of the settlement agreement, latent construction defects, and breach of other warranty obligations. None of the defects specified in the original complaint related to the HVAC system.

SHP's complaint spawned a series of cross-complaints. Swinerton filed a cross-complaint against SHP and various subcontractors, including J & A Mechanical. In February 2007, J & A Mechanical cross-complained against Shephard. J & A Mechanical sought indemnity and contribution, as well as declaratory relief as to issues of liability and damages.

5

In October 2008, Shephard cross-complained against Circo. Shephard alleged that the cross-complaint of J & A Mechanical alleged that acts or omissions by Shephard caused the damages alleged by SHP and Swinerton. Shephard denied these allegations, but if there were such damages, Shephard alleged they were caused by the actions or inaction of Circo. Shephard sought equitable and contractual indemnity and made a demand for Circo to provide a defense and hold Shephard harmless. Shephard also sought damages for contribution, breach of contract, and negligence, and declaratory relief as to Shephard's right to indemnity and defense.

*Claims Involving the HVAC System*

As the litigation progressed, the claims for damages increased and became more specific. In December 2008, Swinerton's third amended cross-complaint alleged that J & A Mechanical entered into a subcontract with an engineering firm to provide HVAC and plumbing engineering for the Embassy Suites Hotel project for the benefit of J & A Mechanical, Swinerton, and SHP. It further alleged that Swinerton had been harmed by the engineering firm's negligence. This third amended complaint sought damages for comparative negligence, contractual and equitable indemnity, breach of contract and warranties, and declaratory relief against J & A Mechanical and others.

In late December 2008, SHP provided a list of identified defects. There were several mechanical defects in the HVAC and Plumbing systems, including a lack of ventilation in all guest rooms. The estimated cost to repair the HVAC and plumbing defects was $1,501,917.54. A report prepared for SHP's counsel detailed defects in the HVAC system. Among the defects was that guest rooms were not provided with the required rates of fresh air ventilation. There was also insufficient ventilation in guest bathrooms due to an undersized exhaust system. As a result, there was excess humidity accumulation and water condensation, leading to deterioration of finishes and mold.

*Tender of Defense*

In February 2009, Shephard, through its counsel, formally tendered defense to Circo. The following month, Shephard tendered defense to Circo's insurer. This tender noted recent case law finding the duty to defend applies even if the subcontractor is later shown not to be liable. Circo's insurer denied the tender.

*Zurich Intervenes in Shephard's Cross-Complaint*

Zurich, Shephard's insurer, assumed the defense. A settlement was reached in September 2009. On behalf of Shephard, Zurich paid $50,000 in settlement.

Zurich then intervened in Shephard's cross-complaint against Circo and filed an amended cross-complaint. In addition to the previous causes of action, Zurich added equitable subrogation. Zurich alleged as follows: Shephard suffered a loss for which Circo was liable, either as the wrongdoer or because Circo was legally responsible to Shephard for the loss. Zurich was not primarily responsible for the loss and Zurich had compensated Shephard for the loss through payment of defense fees and costs and payment of settlement funds. Zurich made such payments to protect its interests, not as a volunteer. Shephard had an existing, assignable cause of action against Circo which it could have asserted had Zurich not compensated it. Zurich suffered damages in a liquidated sum and justice required that the loss be shifted from Zurich to Circo, whose equitable position was inferior to that of Zurich.

Circo answered the amended cross-complaint with a general denial.

*Zurich's Motion for Summary Adjudication*

Zurich moved for summary adjudication on two issues, which it framed as follows: (1) in subrogation to Shephard's claim for contractual indemnity against Circo, Zurich is entitled to reimbursement for amounts expended in defending and resolving claims against Shephard; and (2) Zurich is entitled to a declaration that the indemnity provision between Shephard and Circo obligated Circo to indemnify Shephard in whole or in part against the claims asserted against Shephard. These issues are presented in the

7

fourth cause of action for express (contractual) indemnity and the sixth cause of action for declaratory relief.

In support of its motion, Zurich provided excerpts from the deposition of Thomas Liston, Swinerton's expert for HVAC and mechanical issues. Liston testified that in his opinion the air in the guest rooms was not properly balanced and Circo fell below the industry standard of care in not balancing a stack of rooms that could have been balanced.

Zurich also provided the declaration of Robert Muenchrath, the claims adjuster for Zurich, who had reviewed the business records for the claims against Shephard in this litigation. Muenchrath declared Zurich retained the Klinedinst law firm to defend Shephard. Zurich paid $183,847.46 in fees and costs to defendant Shephard, as well as $50,000 to fund a settlement of the claims against Shephard. He believed the fees, costs, and settlement were reasonable given the complexity of the case and the potential exposure of Shephard.

*Circo's Opposition*

Circo opposed the motion on the basis that it was not proven that Zurich paid to defend allegations arising out of Circo's work. Circo argued it could not make mechanical changes to the HVAC system; it simply attempted to adjust the air flow to balance. Circo reported to Shephard that the system *could not be balanced as designed* and installed. Circo asserted there were no allegations in SHP's complaint or Swinerton's third amended complaint that the air flow was not properly tested for balance or that it was balanced improperly.

In support of its opposition, Circo provided excerpts from the deposition of Kelly Anne Compton from Circo. She testified that Circo reported to Shephard that the exhaust could not be balanced. The problem was that the shafts were too small.

Circo also provided excerpts from the deposition of William Kolthoff, Shephard's expert. He testified it was "hopeless" to try to adjust the air flows with the existing fan because the air flow was already at the minimum and any adjustment reduces the amount

8

of air flow.  He believed the problem was due to faulty design and "contractors are not designers."  He placed the blame on J & A Mechanical for failing to follow up when it received reports that the system could not be balanced to what was specified in the drawings.  In his opinion there was a "simple fix:" upsize the fan and put in more control dampers.  More restriction should be put in the ducts for the higher floors and a new fan installed that was capable of operating under that kind of pressure.  This fix was well reflected in Circo's testing.

Circo also provided an excerpt from the deposition of Robert Blakeman of Shephard, who stated he had no criticism of Circo's work.

In response to Zurich's separate statement of undisputed facts, Circo did not dispute many facts.[3]  At the end of the response, Circo added, "NO EVIDENCE HAS BEEN PRESENTED BY ZURICH THAT CIRCO WAS PRIMARILY RESPONSIBLE FOR THE LOSS FOR WHICH SHEPARD [*sic*], ITS INSURED RECEIVED MONEY OR THAT THE SETTLEMENTS OR COSTS WERE PRIMARILY RELATED TO CLAIMS AGAINST CIRCO."[4]  Beneath this heading Circo argued the evidence "suggests" that the claims Zurich paid were related to Shephard's scope of work and the scope of work of others.  Circo notes Kolthoff blamed the design, citing portions of his

---

[3]  Under Code of Civil Procedure section 437c, subdivision (b)(3) and rule 3.1350(f) of the California Rules of Court, the proper response to each fact set forth in a statement of undisputed facts is "disputed" or "undisputed."  Circo did not follow this rule.  As to some facts, the response was "unknown."  As to other facts, Circo did not dispute the fact, but argued its relevance or completeness without making an objection.  A trial court has discretion to grant the motion due to the opposing party's failure to comply with the requirement for the separate statement.  (Code Civ. Proc., § 437c, subd. (b)(3).)

[4]  Presumably, this heading was to comply with the requirement that, "The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed."  (Code Civ. Proc., § 437c, subd. (b)(3).)  Nowhere in its response does Circo state these (argumentative) facts contained in the heading and elaboration thereon are disputed.

deposition. Circo states, "Indemnity is not required when the claims arise out of design issues."

In reply, Zurich argued there was little doubt that the alleged damages arose from improper air balancing. While the causes may have been in dispute, the work of Circo was at issue. It was unnecessary to establish that Circo was negligent. The issue of a design defect was not addressed.

*Ruling and Judgment*

The trial court granted Zurich summary adjudication on the fourth and sixth causes of action. The court noted that Zurich's material facts were essentially unopposed. The court found that Circo did not dispute that SHP's claims included damages from improper air balancing as SHP listed the lack of ventilation to guest rooms as a defect and its expert opined there was improper air flow.

Judgment was entered in favor of Zurich for $233,847.46 and Circo appealed.

Zurich dismissed the first, second, third and fifth causes of action of its amended cross-complaint.

The trial court awarded Zurich attorney fees and prejudgment interest.

**DISCUSSION**

I

*Standard of Review*

On appeal, we review the grant of summary judgment or summary adjudication under the same standard. (*Haney v. Aramark Uniform Services, Inc*. (2004) 121 Cal.App.4th 623, 631, fn. 1.) Our review is de novo. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819.) The motion is well taken "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment [or adjudication] as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

"A plaintiff or cross-complainant has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. Once the plaintiff or cross-complainant has met that burden, the burden shifts to the defendant or cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant or cross-defendant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).)

Because of the drastic nature of the summary judgment procedure and the importance of safeguarding the adverse party's right to a trial, the moving party must make a strong showing. (*Silva v. Lucky Stores, Inc*. (1998) 65 Cal.App.4th 256, 261.) We strictly construe the moving party's evidence and liberally construe the opposing party's evidence, resolving any doubts as to the propriety of granting the motion in favor of the opposing party. (*Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 112.) If we find that one or more triable issues of material fact exist, we must reverse. (*J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 139.)

II

*Equitable Subrogation*

Zurich intervened in Shephard's cross-complaint against Circo on the theory of equitable subrogation. "Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably subrogated to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor. [Citation.] In the case of insurance, subrogation takes the form of an insurer's right to be put in the position

11

of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291-1292 (*Fireman's Fund*).)

"Generally 'the insurer's safest course in order to preserve its subrogation rights is to seek intervention in the underlying action' brought by the insured against the legally responsible party. [Citation.]" (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104.)

"The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to '"stand in the shoes"' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1292.) "No express assignment of the insured's cause of action is required; equitable subrogation is accomplished by operation of law." (*Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 510.)

The parties agree a cause of action for equitable subrogation has eight elements, as set forth in *Fireman's Fund*. "The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable

12

cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. [Citations.]" (*Fireman's Fund, supra*, at p. 1292, original italics.)

On appeal, Circo contends that Zurich failed to establish any of the eight necessary elements for equitable subrogation. We begin with the first, which is that "the insured suffered a loss for which the defendant is liable, either (a) because the defendant is a wrongdoer whose act or omission caused the loss or (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer." (*Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 555-556.)

Circo contends Zurich failed to establish first element of equitable subrogation because there was no showing that Circo was at fault and the loss did not arise from the scope of Circo's work, which was only to test and balance the air. Zurich contends the first element of equitable subrogation is established because Circo, whether or not the wrongdoer, agreed to indemnify and defend Shephard under the subcontract. Thus, Zurich contends, it established that Circo is legally liable for the loss under the indemnity provision.

To determine if Zurich established the first element of subrogation, we examine the terms of the indemnity agreement.

### III

*Indemnity Agreement*

*A.    Parties to Indemnity Agreement*

Circo contends Zurich failed to establish that Circo agreed to indemnify and defend Shephard. Circo asserts that under the subcontract Circo agreed to indemnify

13

"Contractor" and the subcontract does not indentify Shephard as the "Contractor." This argument is frivolous.**5** The subcontract clearly identifies Shephard as the "Contractor." On the first page, the parties to the contract are identified. After Shephard's name, address, and telephone number, the contract states: "Hereafter called the Contractor." On the signature page of the contract, Shephard executed the contract under the heading "CONTRACTOR."

  *B. Terms and Interpretation of Indemnity Agreement*

  "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.) "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract. [Citation.] The extent of the duty to indemnify is determined from the contract. [Citation.] The indemnity provisions of a contract are to be construed under the same rules governing other contracts with a view to determining the actual intent of the parties. [Citation.]" (*Myers Building Industries, Ltd. v. Interface Technology, Inc*. (1993) 13 Cal.App.4th 949, 968-969.)

  Under the subcontract between Shephard and Circo, Circo agreed to "indemnify and save harmless Owner and Contractor . . . of and from any and all claims . . . arising out of or in connection with Subcontractor's operations to be performed under the

---

**5** Circo requested--and was granted--leave to file an opening brief in excess of the length limit set forth in rule 8.204(c) of the California Rules of Court. Circo's opening brief presents no clear statement of the facts or the law. The arguments are disorganized, repetitive, and at times frivolous. Circo's briefing is replete with typographical and grammatical errors, making it difficult to read. Because our review is de novo, we must address whether there is a triable issue of material fact, but note with disapproval that, despite its length, Circo's briefing provides little assistance in resolving this critical issue on appeal.

Agreement for, but not limited to . . . damage to property of anyone . . . caused or alleged to be caused in whole or in part by any negligence or omission of Subcontractor."

### C.    Triable Issue of Material Fact

The parties dispute whether the damages for poor ventilation "arise out of" or are "in connection with" Circo's work and whether Zurich was obliged to show that Circo was negligent for the indemnity provision to apply. We need not interpret the scope of these terms or whether a finding that Circo was negligent was necessary because we find Circo raised a triable issue of material fact relating to an exception in the indemnity provision.

In accordance with Civil Code section 2782, subdivision (a), the indemnity provision states: "*Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor* for claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or *for defects in design furnished by such persons*." (Italics added.)

In its response to Zurich's separate statement of undisputed facts, Circo asserted that indemnity was not required for claims arising out of design issues, and cited portions of Kolthoff's deposition. Circo provided excerpts of Kolthoff's deposition, in which he blamed the air flow problem on faulty design and opined that attempting to adjust the air flow was "hopeless."[6] The subcontract between Shephard and Circo made reference to the plans and specifications prepared by J & A Mechanical's engineering firm, and recited that Circo had thoroughly examined the plans and specifications and would perform its work "in strict accordance with said plans and specifications." Thus, the

---

[6] Swinerton's third amended complaint contained allegations about the negligence of the engineering firm hired by J & A Mechanical, suggesting that Swinerton believed the problem was due, at least in part, to design defects.

reasonable inference is that Shephard "furnished" the design for the ventilation system to Circo as part of the subcontract.

Since this evidence would permit a reasonable trier of fact to find the underlying fact--that the indemnity provision does not apply because the damages were due to design defect--in favor of Circo, there is a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

### D. *Scope of Summary Adjudication*

Shephard sought summary adjudication as to both Circo's duty to defend and its duty to indemnify. These duties are not identical; the duty to defend is broader than the duty to indemnify. (*Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425, 435, disapproved on another point in *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 565.) An indemnity against claims includes the costs of defense against such claims incurred in good faith. (Civ. Code, § 2778, subd. (3).) Here, the subcontract had a separate provision addressing the duty to defend.

A party may seek summary adjudication as to "one or more issues of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) "Thus, the court could summarily adjudicate that the insurer owes a duty to *defend* an action against its insured *without* determining its duty to *indemnify* any judgment rendered in the action." (Weil & Brown, Civil Procedure Before Trial (The Rutter Group 2012) § 10:44.5, p. 10-13.)

In its motion for summary adjudication, however, as in its cross-complaint, Zurich did not distinguish between the duty to defend and the duty to indemnify; the separate duties were combined in the same issue. Zurich did not ask the trial court to adjudicate whether Circo owed Shephard a duty to defend separate and apart from its duty to indemnify. Instead, Zurich sought reimbursement for "amounts expended in defending and resolving claims against Shephard." Since there is a triable issue of material fact as to the issue of the duty to indemnify, the motion for summary adjudication cannot be

granted because it does not completely dispose of the issue of duty, as framed by Zurich. (Code Civ. Proc., § 437c, subd. (f)(1).)

## DISPOSITION

The judgment is reversed.  Circo shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                                                     DUARTE               , J.


We concur:


_____BLEASE_____, Acting P. J.


_____ROBIE_____, J.

17