Filed 7/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES CARTER et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PULTE HOME CORPORATION et al.,<br><br>    Defendants;<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA et al.,<br><br>    Interveners and Appellants;<br><br>COASTAL CONSTRUCTION & LUMBER COMPANY et al.,<br><br>    Interveners and Respondents. | <br><br><br><br><br><br><br>A154757<br><br>(Contra Costa County<br>Super. Ct. No. MSC13-01718) |

Travelers Property Casualty Company of America (Travelers) appeals from a judgment denying relief on its complaint for equitable subrogation. Travelers defended the residential developer in a construction defects suit as an additional insured under general liability insurance policies issued to several subcontractors on the project, then sought to recover its costs from respondents, subcontractors that also worked on the project but failed to provide the developer a defense. Travelers contends the trial court erred in finding it failed to establish all the elements of its cause of action and denied it a fair trial by violating its own in limine orders. We affirm.

1

## BACKGROUND

Pulte Home Corporation (Pulte), a residential developer and general contractor, was sued for construction defects by the owners of 38 homes in two housing developments. Many subcontractors worked on the projects, under contracts requiring each subcontractor to indemnify Pulte and to name it as an additional insured on the subcontractor's commercial general liability insurance. These contracts required each subcontractor to indemnify Pulte against "all liability, claims, judgments, suits, or demands for damages to persons or property arising out of, resulting from, or relating to Contractor's performance of work under the Agreement ('Claims') unless such Claims have been specifically determined by the trier of fact to be the sole negligence of Pulte . . . ."

Pulte cross-complained against the subcontractors who worked on some or all of the homes at issue, alleging it was entitled to a defense and indemnity, and tendered its defense of the homeowners' suit to the subcontractors and their insurers.

Travelers, the insurer for four of the subcontractors,[1] accepted the tender and provided a defense. The "Blanket Additional Insured Endorsements" to Travelers's named insureds' policies stated that the "person or organization is only an additional insured with respect to liability caused by 'your work' for that additional insured."

---

[1] AGI Associates, Inc., doing business under the name of AGI Shower Door & Mirror (AGI), Bill Wilder Construction Company (Wilder), Halabi, Inc., doing business under the name of Duracite (Duracite), and Sullivan Countertops, Inc. (Sullivan).

Respondents are seven subcontractors[2] who did not respond to the tender of Pulte's defense and whose insurance carriers denied that the additional insured endorsements to their policies required the insurers to provide a defense.

Travelers filed a complaint in intervention against respondents and other subcontractors no longer involved in the litigation.[3] Its complaint and first amended complaint alleged causes of action for declaratory relief, equitable subrogation, equitable indemnity and contractual subrogation. Travelers dismissed all the causes of action except equitable subrogation prior to trial.

Pulte eventually settled the homeowners' claims and its claims against all the subcontractors. Travelers ultimately paid $320,491.82 for Pulte's defense. At trial, it sought to recover $156,091.82 from respondents, having recovered $164,400 from other subcontractors.[4]

Travelers's position at trial was that respondents were each jointly and severally liable for the remainder of its costs for defending Pulte, as each respondent had a contractual obligation to defend Pulte. Travelers filed an in

---

[2] Coastal Construction & Lumber Company (Coastal), Colorific Painting, Inc. (Colorific), Concord Plumbing Company (Concord), Daggett Electric, Inc. (Daggett), Dawson Electric, Inc. (Dawson), Jerry Dellinger Concrete, Inc. (Dellinger), Dependable Heating (Dependable), Josh Edward Gish, doing business under the name of Woodland Stairs and Millwork (Woodland).

[3] Travelers initially named many more subcontractors as defendants in intervention. At the time of trial, eight remained: Respondents and Colorific. Travelers later settled with Colorific, which is not a party to this appeal.

[4] Travelers recovered $208,000 from subcontractors no longer involved in the litigation by the time of trial, $141,400 of which it allocated to defense fees; it later recovered an additional $23,000 when it settled with Colorific.

3

limine motion seeking an order precluding the parties from presenting evidence or argument suggesting its damages should be allocated or apportioned among the subcontractors, which the trial court stated was "in effect" granted after confirming that Travelers's case was "just all or nothing." The court also granted Travelers's in limine motion for an order precluding presentation of evidence or argument concerning whether respondents' work on the homes was defective or caused damages, which Travelers sought on the basis that the truth of such claims was irrelevant because respondents agreed to defend Pulte against *claims* of negligence or defective work.

According to the evidence at trial, there was considerable variation in the number of homes each respondent worked on: Two worked on all 38 homes involved in the litigation (Coastal and Dellinger), one worked on 30 (Daggett), two worked on 23 (Concord and Woodland), and another two worked on only six or eight of the homes (Dependable and Dawson, respectively). The homeowners' complaints did not indicate which subcontractor worked on which home, and no evidence was presented as to whether the work of any subcontractor was defective. For example, while the complaint alleged violations relating to heating, ventilation, and air conditioning (HVAC) systems within the scope of Dependable's work, and there was evidence that Dependable worked on three homes in one of the subject residential developments, Travelers's expert witness could not determine whether the complaint alleged there were HVAC issues in any of the three homes on which Dependable worked. The trial court found that Pulte's tender of defense to the subcontractors was based on "the contractual provision that required each to provide a defense with respect to plaintiffs'

4

claims related to its scope of work, regardless of whether that work was ultimately proved to be defective."

As will be explained, the trial court analyzed the factors necessary to establish entitlement to equitable subrogation, determined that Travelers had not proven at least three of these factors, and concluded that it "would not be just" to find respondents jointly and severally liable for the fees and costs Travelers sought to recover. Travelers's motion for a new trial was denied, and this appeal followed.

## DISCUSSION

Travelers contends the judgment must be reversed because it established each of the elements of its claim for equitable subrogation, the judgment is contrary to public policy in that it incentivizes subcontractors to breach their subcontracts, and the trial court's violation of its own in limine orders deprived Travelers of a fair trial. Travelers argues that respondents are each jointly and severally liable to it for the cost of Pulte's defense (less the amount Travelers has recovered from other parties).[5] In the event we disagree as to joint and several liability, however, Travelers asks us to remand for the trial court to allocate to each respondent a proportionate share of the defense costs.

## I.

"Subrogation is the 'substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.' (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291.) 'In the case of insurance, subrogation takes the

---

[5] In this opinion, our references to the amount Travelers seeks to shift to respondents as the "full" or "entire" cost of Pulte's defense mean this remaining amount of Travelers's total expenditures.

form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.  [Citations.]' (*Id.* at pp. 1291–1292.)  'The subrogated insurer is said to " 'stand in the shoes' " of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured.  Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.' (*Id.* at p. 1292.)" (*Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2019) 182 Cal.App.4th 23, 31–32 (*Cleveland Wrecking*).)

" ' "As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." [Citations.]' (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 704.)" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1292 (*Fireman's Fund*).)

" 'The essential elements of an insurer's cause of action for equitable subrogation are as follows:  [1] the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; [2] the claimed loss was one for which the insurer was *not* primarily liable; [3] the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; [4] the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; [5] the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own

6

benefit had it not been compensated for its loss by the insurer; [6] the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; [7] justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and [8] the insurer's damages are in a liquidated sum, generally the amount paid to the insured.' (*Fireman's Fund*[, *supra,*] 65 Cal.App.4th at p. 1292.)" (*Cleveland Wrecking, supra,* 182 Cal.App.4th at pp. 33–34.)

We review the trial court's decision for abuse of discretion. (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 482 (*Valley Crest*); *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1256.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.] [¶] "The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria." ' (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) The scope of the trial court's discretion is limited by law governing the subject of the action taken. (*Ibid*.) An action that transgresses the bounds of the applicable legal principles is outside the scope of the trial court's discretion and, therefore, is deemed an abuse of discretion. (*Ibid*.) [¶] In applying the abuse of discretion standard, we determine whether the trial court's factual findings are supported by substantial evidence and independently review its legal conclusions. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)" (*Valley Crest,* at p. 482.)

7

## II.

As will become apparent, it was critical to the trial court's decision that Travelers framed its case as an all-or-nothing claim against respondents jointly and severally. In Travelers's view, after initially agreeing that a claim of equitable subrogation required joint and several liability and on this basis granting its in limine motion excluding evidence relevant to respondents' individual liability in the underlying lawsuit, the trial court changed its position and found it inequitable to shift the entire cost of the developer's defense to respondents, and then refused to entertain Travelers's request to allocate damages proportionally among the subcontractors.

Travelers took the position at trial that because each subcontractor had a contractual duty to defend Pulte against claims relating to its work regardless of whether those claims were ultimately proven (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 547, 568 (*Crawford*)), and the homeowners' lawsuit included claims related to each of the subcontractors' work, respondents could each be held jointly and severally liable for Travelers's costs in defending Pulte. As an insurer, Travelers undisputedly had an obligation to defend the entire action if any of the claims against Pulte were potentially covered, including claims that were *not* potentially covered. (*Presley Homes, Inc. v. American States Ins. Co.* (2001) 90 Cal.App.4th 571, 574–575; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 48 (*Buss*).) Travelers's position at trial rested in part on the assumption that respondents were each similarly obligated to defend the entire case against Pulte despite their contracts with Pulte imposing a duty to indemnify and defend only claims related to the individual subcontractor's scope of work.

Respondents, in essence, maintained there was no common obligation for which they could be held jointly and severally liable because each

8

subcontractor had a distinct duty limited to defense of claims related to its particular scope of work, and disagreed that their defense obligations were as broad as an insurer's. In respondents' view, Travelers precluded its own recovery by advancing a cause of action and theory of the case that improperly sought to impose joint and several liability rather than seeking to recover from each respondent a portion of the defense costs proportional to that subcontractor's potential liability.

Travelers maintained throughout the trial—until closing argument— that it was entitled to shift its loss "entirely" to respondents, jointly and severally. In closing argument, while adhering to this position, Travelers argued that if the trial court did not agree, Travelers was entitled to allocation rather than no recovery at all from respondents, and asked the court to reopen the evidence to address the issue if necessary. Respondents objected to Travelers's change of position at this point in the trial and, ultimately, the trial court agreed it would be unfair to permit Travelers to assert a claim for allocation of damages "after the issues have been fully framed, the trial briefs have been filed, the evidence taken, and closing arguments are all but complete." The issue became the subject of Travelers's objections to the court's tentative decision and motion for a new trial, Travelers arguing that it was the court's ruling on its motion in limine, not Travelers's framing of the case, that limited its presentation at trial to the "all or nothing" joint and several liability theory.

On this appeal, Travelers first asks us to accept its all or nothing view of the equitable subrogation doctrine and reverse the trial court's decision, finding Travelers entitled to equitable subrogation as a matter of law with respondents jointly and severally liable. Alternatively, Travelers asks us to remand for allocation of damages, arguing that the trial court deprived it of a

9

fair trial by initially excluding evidence related to allocation as irrelevant, then denying Travelers relief due to the absence of that evidence.

Travelers's position is untenable. The record leaves no question that Travelers chose to frame this case as an all-or-nothing claim for equitable subrogation. Prior to trial, Travelers dismissed the causes of action in which it had sought to impose liability on each respondent for a proportional share of the defense costs (causes of action for "declaratory relief—apportionment of defense obligations," "declaratory relief—apportionment of indemnity obligations" and equitable indemnity), leaving only its claim for equitable subrogation to be tried. Travelers's in limine motion to exclude evidence or argument on allocation of damages was based on the premise that such evidence was irrelevant because respondents were jointly and severally liable for the defense costs Travelers incurred. When the trial court asked Travelers's counsel whether it was correct in understanding that Travelers was "not seeking apportionment of responsibility" and was taking the position that "each of these defendants or cross-defendants is jointly and severally liable for the entire defense obligation," counsel replied in the affirmative. The court then confirmed, "so basically your position is that it is all or nothing? [¶] If I don't find, for example, on equitable subrogation, that justice requires—justice requires shifting the entire burden, then you simply lose on your fifth cause of action, correct?" Counsel responded, "That's essentially right, Your Honor. [¶] Basically you're determining the equitable positions of the—of the Travelers entities versus the subcontractors. [¶] If you find that we are in a superior equitable position, then all of it gets shifted to them. [¶] If you find the equities are not superior or that our—or that ours is inferior, then it doesn't get shifted."

10

Travelers argues in this court, as it did below, that its in limine motion only sought guidance from the trial court, and it was not responsible for the exclusion of evidence on allocation. But the court's order was clearly a response to Travelers's limitation of its case to a claim of equitable subrogation imposing joint and several liability on respondents. At the conclusion of the hearing on in limine motions, the court stated, with regard to the motion to exclude evidence of apportionment, "As I understand it, it's just all or nothing as I said before; so, *in effect*, that motion is granted. [¶] If some of you find somewhere along the line that you think there's some basis for apportionment in the pleadings or in a pretrial order, it would be good to let me know sooner rather than later, because otherwise I'm planning to do an all or nothing trial on equitable subrogation." (Italics added.)

Travelers emphasized the all-or-nothing nature of its claim in its trial brief on the elements of equitable subrogation. For example, Travelers argued, "[t]here is thus no discretion in a subrogation action to shift only a portion of the debt or to allocate the debt among multiple parties in proportion to their share of the debt. Rather, if the court determines that one or more of the defendants had an obligation to defend Pulte and that Travelers is in a superior equitable position to those parties, then the entire debt should be shifted to those parties."

Travelers argues that respondents violated the in limine ruling by arguing allocation was required, and the trial court violated its own ruling by considering allocation (or the absence thereof) in determining that Travelers was not entitled to equitable subrogation. As Travelers sees it, the trial court changed its mind and found allocation was relevant to the equitable subrogation claim, as reflected in the court's determination that Travelers was not in a superior equitable position because it was attempting to recover

11

the entire amount of its defense costs from each respondent. In Travelers's view, the trial court improperly mixed the amount of damages with its analysis of the equities rather than determining the equities and then considering the proper amount of damages. Moreover, according to Travelers, when Travelers realized respondents were raising allocation issues in their closing briefs and arguments and sought to present the previously excluded evidence, the trial court refused to let it do so, then based its decision in part on the absence of such evidence.

The record does not support Travelers's characterization. As we have said, Travelers unquestionably framed its case as an all-or-nothing claim against respondents, jointly and severally. Respondents argued there was no basis to impose joint and several liability because there was no shared obligation to support doing so (see *Douglas v. Bergere* (1949) 94 Cal.App.2d 267 ["[i]f two persons bind themselves severally in respect to the same subject matter each obligor is liable only for his several promise and cannot be held for the other"]; Civ. Code, § 1659[6] ["[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several"]), as each subcontractor had an obligation to defend Pulte only with respect to claims arising from its own scope of work. Respondents' arguments concerning allocation challenged the premise of Travelers's cause of action; their assertion of this defense did not introduce the issue of allocation so as to justify Travelers's attempt to change its theory of the case after the close of evidence. Similarly, the trial court's consideration of the fact that Travelers was seeking to impose joint and several liability upon each subcontractor for the full cost of Pulte's

---

[6] Further statutory references will be to the Civil Code unless otherwise specified.

defense as part of its analysis of the equities was necessitated by Travelers's framing of its claim. The trial court did not "change its mind" as to the relevance of allocation evidence; it adhered to its conclusion that such evidence was not relevant to Travelers's claim of a joint and several obligation, and found that claim inequitable.

Travelers makes the same argument regarding its in limine motion to exclude evidence or argument concerning whether respondents' work on the homes was defective or caused damages. Travelers's motion argued that because the subcontractors agreed to defend Pulte against *claims* of negligence or defective work, the truth of such claims was irrelevant. Travelers claims respondents violated the order granting this motion by arguing that they were not shown to have caused any of the homeowners' injuries and could not be held liable for injuries caused by other subcontractors' work, and argues the trial court violated its own order by basing its decision in part on the absence of proof as to which subcontractor caused damage to which property.

The statement of decision discusses the fact that some of the equitable subrogation cases consider fault, finding it inequitable to leave the costs of litigation defense with an insurer who played no role in causing the underlying loss rather than shifting the cost to the party who caused, or was alleged to have caused, the injury. (E.g., *Cleveland Wrecking, supra,* 182 Cal.App.4th at pp. 39, 47; *Patent Scaffolding Co. v. William Simpson Construction Co.* (1967) 256 Cal.App.2d 506, 512–516; but see *Valley Crest, supra,* 238 Cal.App.4th at p. 491 [noting "[a]ge and subsequent appellate court opinions have not been kind to *Patent Scaffolding*" regarding its indication that equitable subrogation is not available if defendant's negligence was not cause of insured's loss]; *Fireman's Fund Ins. Co. v.*

*Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 557 [criticizing *Patent Scaffolding Co.*].)  In noting that Travelers offered no proof as to which subcontractor's work was defective here, however, the trial court's focus was the principle that each subcontractor's obligation to indemnify and defend was limited to its own scope of work.  The point was not that Travelers could not prevail on its equitable subrogation claim because it failed to present evidence of causation but that respondents could not be held jointly and severally liable for the entire cost of Travelers's defense of Pulte.

We find no violation of the court's in limine orders and no denial of Travelers's right to a fair trial.  Accordingly, we will review the trial court's decision to determine whether it abused its discretion in finding justice did not require shifting Traveler's entire loss to respondents, jointly and severally.  We express no opinion as to whether damages could have been allocated proportionally among respondents if Travelers had asserted a cause of action seeking such relief.[7]

---

[7] Travelers argues that the trial court was not constrained to view joint and several liability as the only form of relief available.  Equitable subrogation being a claim in equity, Travelers argued the trial court could and should have sought a remedy to do justice between the parties, rather than allowing respondents to evade their contractual duties to defend without consequence.  (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1133 ["equitable remedies are flexible"]; *Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1786 ["no inflexible rule has been permitted to circumscribe the power of equity to do justice"].)  We do not address how a claim for equitable subrogation could or should be framed in a case such as this, in which an insurer seeks equitable subrogation against multiple defendants with independent contractual obligations to the insured.  As we have said, Travelers presented its claim to equitable subrogation as requiring a shifting of its entire loss to respondents, jointly and severally.  The trial court was not required to allow Travelers to alter its theory of the case and claim for relief after the case had been tried in accordance with Travelers's framing of the issues.

## III.

The trial court found Travelers failed to prove three of the elements of its claim for equitable subrogation (Nos. 3, 7, and 8 in the description above) in that it failed to establish the loss for which it compensated Pulte was one for which any of the subcontractors was "primarily liable" (factor 3), justice does not require shifting the loss entirely from Travelers to the subcontractors, jointly and severally, as none is in an equitable position inferior to Travelers (factor 7), and Travelers failed to prove its damages because its proof included bills for work done for purposes other than defense of Pulte.

In most of the decided equitable subrogation cases, an insurer paid a claim on behalf of its insured for a single indivisible injury and then sought to recover its costs from a single party who, in fairness, should be responsible for them. For example, in *Cleveland Wrecking,* the employee of a stairway subcontractor (Delta) sued the general contractor and a demolition subcontractor whose negligence was alleged to have caused the employee's injury. Both subcontractors were contractually required to indemnify the general contractor for liability arising from their work and to obtain liability insurance with the general contractor as an additional insured, but only Delta obtained the required insurance. Delta's insurer funded a settlement on behalf of the general contractor, then sought subrogation against Cleveland, alleging Cleveland breached its contract by failing to defend and indemnify the general contractor. The question for the court was whether it was more equitable to leave the cost of the defense with the insurer who "had nothing to do with causing the loss but abided by its contractual obligation to pay for it" or shift that cost to the subcontractor who "caused the loss and then shunned its contractual obligation to pay it." (*Cleveland Wrecking,*

15

*supra,* 182 Cal.App.4th at p. 47.)  The court concluded the insurer's equitable position was superior to Cleveland's.  (*Ibid.*)

The complication in the present case, of course, is that the homeowners asserted a variety of claims relating to the work of many different subcontractors, and Travelers asserted its right to equitable subrogation against multiple subcontractors whose indemnification and defense obligations to Pulte were specifically limited to claims arising from each one's individual scope of work.

### A.

The trial court found Travelers failed to establish that the loss for which Travelers compensated Pulte was one for which any of the subcontractors was "primarily liable" for two reasons.  First, under Travelers's theory of the case, each subcontractor had a duty to provide Pulte with a complete defense, meaning each had the same obligation and no one of the subcontractors' was "primarily liable."  Second, since each subcontractor was responsible for providing a defense to Pulte with respect to its individual scope of work, the subcontractors did not each have the same obligation and no one of them could be viewed as "primarily liable."

Travelers argues the court's reasoning is contrary to the decisions in *Cleveland Wrecking, supra,* 182 Cal.App.4th 23, and *Valley Crest, supra,* 238 Cal.App.4th 468.  Travelers describes *Cleveland Wrecking* as holding that "where an additional insured carrier and a subcontractor involved in the project have an overlapping contractual obligation to defend a developer, the subcontractor's liability is primary."  Travelers specifically notes the *Cleveland Wrecking* court's statement that "[a]n entity which, like [the demolition subcontractor], agrees to indemnify *the other party to the underlying transaction* has a liability of greater primacy than an independent

16

insurer that insures against loss." (*Cleveland Wrecking*, at p. 44.)  According to Travelers, respondents, who directly contracted to assume Pulte's defense, had a "greater primacy of liability" than Travelers, an independent insurer.

Travelers's portrayal of *Cleveland Wrecking* as establishing a rule necessarily applicable in all equitable subrogation cases takes the court's holding too far, at least insofar as Travelers asserts the rule in a case involving multiple subcontractors with potential liability for different underlying injuries.  Cleveland was concerned with a single underlying injury for which a single subcontractor was allegedly responsible, and the subcontractor had breached its contractual obligation to indemnity and obtain liability insurance coverage for precisely the type of injury at issue (negligence causing injury to another subcontractor's employee).  The insurer claiming equitable subrogation had assumed an obligation to defend the general contractor in the same circumstances, albeit only by virtue of its general liability insurance policy covering the subcontractor whose employee was injured.  Here, by contrast, the underlying suit alleged many injuries and each of the subcontractors—Travelers's insureds, as well as respondents— was potentially liable for only some of them, those arising out of the scope of work of the particular subcontractor.  Travelers's contracts with its named insureds limited its obligations to Pulte as an additional insured in the same manner, to claims arising out of the named insureds' work on the project.  Unlike the situation in *Cleveland Wrecking*, in which there was no question Cleveland and the insurer had each assumed an obligation to indemnify and defend the general contractor against the claim asserted by the plaintiff, here the insurer seeks equitable subrogation against respondents whose obligations to provide indemnity and a defense were each limited to specific *different* types of claims.

17

Travelers, as an insurer, was obligated to defend the entire case if any of the claims potentially involved the scope of work of its named insureds. (*Presley Homes, Inc. v. American States Ins. Co., supra,* 90 Cal.App.4th at pp. 574–575; *Buss, supra,* 16 Cal.4th at p. 48.) Travelers's claim against respondents is based on the assumption that a subcontractor contractually obliged to provide a defense for claims within its scope of work has the same obligation to provide a complete defense to the entire action. It cites no authority in support of this assumption, however, and the cases discussing the obligation involve, and therefore phrase the obligation in terms of, insurers. An insurer's duty to defend the entire action in which some claims are potentially covered and others are not (a "mixed" action) derives from policy, not contract. (*Buss,* at pp. 48–49.)[8] Policy considerations applicable to an insurer's contract with its insured do not necessarily apply in the same manner to the contractual obligations of a subcontractor indemnitor to a general contractor indemnitee.[9]

---

[8] "To defend meaningfully, the insurer must defend immediately. (*Montrose Chemical Corp. v. Superior Court* [(1993)] 6 Cal.4th [287,] 295.) To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The 'plasticity of modern pleading' (*Gray v. Zurich Insurance Co.* [(1966)] 65 Cal.2d [263,] 276) allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa. The fact remains: As to the claims that are at least potentially covered, the insurer gives, and the insured gets, just what they bargained for, namely, the mounting and funding of a defense. But as to the claims that are not, the insurer may give, and the insured may get, more than they agreed, depending on whether defense of these claims necessitates any additional costs." (*Buss, supra,* 16 Cal.4th at p. 49.)

[9] As the court explained in *Crawford,* "[t]hough indemnity agreements resemble liability insurance policies, rules for interpreting the two classes of contracts do differ significantly. Ambiguities in a policy of insurance are construed against the insurer, who generally drafted the policy, and who has

18

Moreover, section 2778, subdivision 4, specifies that, absent evidence of a contrary intention, a contract of indemnity requires the indemnitor "to defend actions or proceedings brought against [the indemnitee] in respect to the matters embraced by the indemnity." This provision "places in every indemnity contract, unless the agreement provides otherwise, a duty to assume the indemnitee's defense, if tendered, against all claims 'embraced by the indemnity.'" (*Crawford, supra,* 44 Cal.4th at p. 557.) Respondents each assumed a contractual obligation to defend Pulte only with respect to claims involving their respective scope of work. Each respondent's liability was thus limited to a proportionate share based on its scope of work. (*Id.* at p. 565, fn. 12; *Pulte Home Corporation v. CBR Electric, Inc.* (2020) 50 Cal.App.5th 216, 226 (*CBR Electric*).)[10]

received premiums to provide the agreed protection. (See, e.g., *Buss, supra,* 16 Cal.4th 35, 47–48; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37–38.) In noninsurance contexts, however, it is the *indemnitee* who may often have the superior bargaining power, and who may use this power unfairly to shift to another, a disproportionate share of the financial consequences of its own legal fault. (E.g., *Goldman v. Ecco–Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 49; see *Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425, 436.)" (*Crawford, supra,* 44 Cal.4th at p. 552.)

[10] *Crawford* is not directly on point here, as it is not an equitable subrogation case and did not involve multiple subcontractors potentially liable for some of a number of different injuries, but it clearly supports respondents' position in this case: The *Crawford* footnote commented upon the problem of "sorting out multiple, and potentially conflicting, duties to assume the active defense of litigation then in progress" and indicated that a non-defending subcontractor's "proportionate liability for breach of [the] duty to defend" can be determined after the underlying construction defect litigation is concluded. (*Crawford, supra,* 44 Cal.4th at p. 565, fn. 12.) The specific issue in *Crawford* was whether a particular subcontractor, ultimately determined at trial not to have been negligent and therefore not to owe indemnity, could be held liable for breach of a duty to defend the general contractor against claims of defects arising from the subcontractor's

Indeed, current California law expressly makes unenforceable provisions in a construction contract purporting to impose upon subcontractors the obligation to indemnify or defend a developer or general contractor for claims of construction defects "to the extent the claims arise out of, pertain to, or relate to the negligence of the builder or contractor or the builder's or contractor's other . . . independent contractors . . . or to the extent the claims do not arise out of, pertain to, or relate to the scope of work in the written agreement between the parties." (§ 2782, subd. (d).) While the subcontractors' contracts with Pulte in the present case predated the enactment of this explicit statutory limitation of subcontractors' liability to the scope of their work, then-existing section 2782, subdivision (a), like the present statute, made unenforceable provisions in construction contracts purporting to indemnify the promisee against liability for damage "arising from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee." (§ 2782, subd. (a).) This provision, together with section 2778 and *Crawford,* reflects the same policies underlying the subsequent explicit enactments. Holding respondents jointly and severally liable for the cost of Travelers's defense of Pulte would be completely inconsistent with the policy behind section 2782.

Travelers challenges the trial court's reasoning that even if a given respondent was obliged to provide Pulte the complete defense Travelers in fact provided, it could not be said that Travelers compensated Pulte for a loss for which the respondent was "primarily" liable. Travelers argues this reasoning is contrary to law because "more than one party can be primarily

negligence. *Crawford* held it could, to the extent of its proportionate liability. (*Ibid.*)

20

liable for a loss." But the cases Travelers cites concern situations in which multiple defendants are each held equally liable for a loss. (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1145 [co-conspirators each equally liable for damages caused by conspiracy]; *Bostick v. Flex Equipment Co.* (2007) 147 Cal.App.4th 80, 89 [under strict products liability, defendants in chain of distribution is joint and several].) The whole purpose of equitable subrogation is to shift loss from one party to another who, comparatively speaking, should have borne the cost. The trial court's point was that if all the parties had an equal obligation to provide Pulte's defense, none were "primarily liable" as compared to the others.

**B.**

The above analysis also bears on the seventh element of equitable subrogation—"justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer." (*Cleveland Wrecking, supra,* 182 Cal.App.4th at pp. 33–34.) This is the factor the trial court found determinative.

" ' "[T]here is no facile formula for determining superiority of equities, for there is no formula by which to determine the existence or nonexistence of an equity except to the extent that certain familiar fact combinations have been repeatedly adjudged to create an equity in the surety or the third party. . . ." ' " (*Valley Crest, supra,* 238 Cal.App.4th at p. 484, quoting *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1112.) The cases discuss a number of potentially relevant factors, with emphasis on one or another depending on the circumstances.

*Cleveland Wrecking, supra,* 182 Cal.App.4th at page 44, found the insurer's equitable position superior to the subcontractor's due to the subcontractor's alleged fault for the underlying injury and breach of its

contractual obligations to the general contractor to indemnify and defend such claims and to obtain insurance covering the general contractor. The insurer was not at fault and complied with its obligation to defend even though that obligation arose from a more general promise based in its insurance policy for a different subcontractor. Public policy militated in favor of imposing the costs on the party who caused the loss and breached its contractual obligation to pay rather than the party who had nothing to do with the loss but complied with its contractual obligation.

In *Valley Crest, supra,* 238 Cal.App.4th at pages 487–489, although the subcontractor's work was determined not to have been the cause of the plaintiff's injury, the insurer was found to be in a superior equitable position because the subcontractor had failed to comply with its contractual obligations to indemnify the general contractor and maintain liability insurance with the general contractor as a named insured. The court focused upon the facts that the subcontractor had agreed to indemnify the general contractor for the specific type of loss that occurred while the defense was provided by the general contractor's own insurer under a general liability insurance policy, and the subcontractor ignored its contractual duties to defend (as it was required to do at least until the point it was granted summary judgment in the underlying suit) and to maintain insurance coverage for the general contractor, while the insurer fulfilled its contractual obligations.

Travelers argues that it is in a superior equitable position to respondents because, as in *Cleveland Wrecking* and *Valley Crest*, it was not involved in the underlying transaction and respondents each agreed to indemnify and defend Pulte for the specific type of claims asserted in the homeowners' suit. The situation is not as clear as it was in either *Cleveland*

22

*Wrecking* or *Valley Crest.* As we have discussed, respondents each agreed to provide Pulte indemnity and defense of claims related to their particular scope of work, and the lawsuit involved claims involving many subcontractors' spheres. Unlike the insurer in *Valley Crest,* the duties of which arose from its own general liability contract with the general contractor, Travelers's insurance coverage of Pulte was limited to claims arising from its named insureds' scope of work; its duty to defend against other claims arose from its role as an insurance company, not from contract. Travelers's contractual promises to Pulte as an additional insured were thus more closely related to the specific construction project than were the promises of the general contractor's insurer in *Valley Crest.* Travelers's own contractual obligations were also more closely related to the underlying transaction than were the insurer's in *Cleveland Wrecking.* In that case, the fact that Cleveland not only failed to comply with its indemnity and defense obligations but was allegedly responsible for the injury, played a significant role in the court's analysis of the equities. Here, Travelers's own named insureds, as well as respondents, were alleged to be at fault in the underlying suit.

Significantly, Travelers is seeking to shift to respondents costs for defending Pulte against claims unrelated to the scope of respondents' work— claims for which respondents did *not* promise to indemnify and defend Pulte. Respondents' failure to comply with their contractual obligations to indemnify and defend Pulte for claims arising from their own work could not make them liable for losses due to the work of other independent subcontractors. (§ 2782.) Equitable subrogation allows a loss to be shifted from one who was legally liable to another who is more responsible for the

23

*same* loss.[11]  Here, Travelers is trying to shift the loss jointly and severally to respondents who were each liable for only a portion of the total loss.  (See *Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082 [equitable subrogation not available to insurer of general contractor seeking to shift cost of defense to subcontractor's insurer, which refused defense; insurer entitled only to contribution, not entire cost of defense].)[12]

---

[11] In its analysis of whether the parties had agreed to indemnify Pulte for the same loss, the trial court discussed a distinction between the additional insured endorsements to respondents' insurance policies, which were limited to "ongoing operations" and were the basis of respondents' insurers denial of a defense, and Travelers's extension of coverage for "completed operations."  The trial court noted Travelers's argument at trial that the "ongoing operations" endorsements did not preclude the claims in this case, but stated that Travelers's interpretation was based on cases decided years after the insurers made their coverage decisions.  Travelers devotes a significant portion of its brief to challenging the trial court's refusal to apply the more recent precedent.  The question is not directly relevant, as Travelers challenges respondents' denial of a defense, not their insurers' denial.  Travelers makes an issue of the trial court's comments, however, because the trial court stated that due to its broader extension of coverage, Travelers did not "deserve extra credit for 'stepping up' to provide a defense, compared to carriers who were evaluating their position under what they claimed to be a pure 'ongoing operations' [additional insured] endorsement." Travelers believes it is entitled to this credit.

We do not find it necessary to address the merits of the trial court's conclusion.  The trial court's point about the "ongoing operations" language was expressly addressed to Travelers's position vis-à-vis the other insurers, which is not relevant to the issues on this appeal.  As to respondents directly, the trial court noted Travelers's statement that its indemnification obligation to Pulte as an additional insured was limited to damages resulting from the work of its named insureds, and commented that if this was true, "the obligations of the remaining subcontractor defendants are equally limited."

[12] Addressing the point that an insurer seeking equitable subrogation stands in the shoes of the insured, Travelers argues it is not clear that Pulte could not recover the entire cost of its defense from each subcontractor.  It points to *Valley Crest,* in which the general contractor's insurer prevailed on

As recently explained in *CBR Electric,* which like the present case involved an equitable subrogation claim by the insurer that defended Pulte as an additional insured under a subcontractor's policy, "subrogation entirely shifts the claimed loss, but the claimed loss does not have to be the entire loss the subrogee suffered." (*CBR Electric, supra,* 50 Cal.App.5th at p. 231.) Since "the amount of defense costs an insurer may seek depends on what the subrogor (here, Pulte) would be entitled to, . . . [i]f Pulte could not recover the entire costs of defense from defendants, neither can [the insurer]." (*Ibid.*) Pursuant to the subcontracts, "Pulte's recovery against defendants is defined by the duty to defend in the subcontracts. That duty renders defendants responsible not for the entire cost of defending the construction defect actions, but only for the costs of defending claims related to their work." (*Ibid.*)

Travelers argues that the present case is "almost identical" to *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th 553. There, the defendant leased camera equipment under a contract requiring it to return the equipment by a specified date or pay its full value. The equipment was stolen through no fault of the defendant and the defendant refused to pay for it; the lessor's insurer paid its claim and then sought equitable subrogation against the defendant. *Fireman's Fund*

its claim of equitable subrogation against the subcontractor for the full cost of the general contractor's defense. The trial court ruled the subcontractor, by failing to accept the general contractor's tender of defense, forfeited its right to seek allocation of the attorney fees and settlement costs between claims related to the subcontractor's work and unrelated claims. (*Valley Crest, supra,* 238 Cal.App.4th. at p. 477.) This aspect of the trial court's decision, although noted in the description of the procedural history of the case, was not an issue on the appeal and not further mentioned in the appellate court opinion. Moreover, *Valley Crest* did not involve multiple injuries potentially attributable to the work of multiple subcontractors.

*Ins. Co.* held the insurer's equitable position was superior because the defendant breached a specific promise to return or pay for the equipment while the insurer performed its more general promise to provide the lessor with insurance coverage. In Travelers's view, the situation is the same here because respondents specifically promised to defend Pulte against loss arising from their work on the project but refused to do so, while Travelers provided the defense despite not even having a direct contract of insurance with Pulte. But, unlike the insurer's promise of general insurance coverage to its insured in *Fireman's Fund Ins. Co.* (and as discussed with respect to *Valley Crest),* Travelers's obligation to Pulte was tied to the project and underlying injury by its limitation to claims arising from the named insureds' work on the project. While the loss for which the insurer of the lessor in *Fireman's Fund Ins. Co*, or the general contractor in *Valley Crest,* sought equitable subrogation was one that happened to fall within the general insurance coverage the insurer provided to its insured, Travelers was obliged to provide a defense to Pulte only in the specific situation that occurred—a suit involving claims against its named insureds for work performed for Pulte.

Travelers suggests the trial court was confused in believing its agreement to defend Pulte was equivalent to respondents' for purposes of this analysis. It theorizes that the court may have conflated the concepts of an obligation to defend with that of a promise to do so, which it argues was specific to Pulte and the project for respondents but only general for Travelers (to defend any action against anyone its insureds were required to add as additional insureds). Or, Travelers suggests, the trial court may have mistakenly believed Travelers's polices and endorsements were specific to Pulte and the project when in fact they were blanket additional insured

endorsements. The latter is unlikely, as the trial court's statement of decision specifically refers to Travelers's "Blanket Additional Insured Endorsements." As to the former, the promises were not quite as different as Travelers maintains, since Travelers's promise to defend an additional insured its subcontractor insured was required to add to the policy against claims arising from the subcontractor's work would necessarily contemplate the risk of a claim against the general contractor for whom the insured performed work.

In any event, this point is not critical. Contrary to Travelers's characterization, neither this district nor any court we are aware of has held that the equities of an insurer are superior *as a matter of law* when the insurer's promise is more general than that of a party to the underlying transaction.[13] Equitable subrogation being, by definition, an equitable doctrine, every case will turn on its facts. Here, the salient point is that respondents did not promise to defend Pulte against claims that did not arise from their own scope of work and Travelers's claim for equitable subrogation sought to impose on respondents the costs of defending just such claims.

_____

[13] In analyzing the primacy of liability, *CBR Electric* applied the reasoning of *Cleveland Wrecking* and *Valley Crest* to hold that because the insurer who provided the defense to Pulte as an additional insured on a subcontractor's general liability policy was "a general liability insurer uninvolved in the underlying residential developments" and the subcontractors from which it sought equitable subrogation were "directly involved in the developments and entered agreements obligating them to defend Pulte in any lawsuits related to their work," the subcontractors were "primarily liable for the claimed loss—that is, their equitable share of the defense costs." (*CBR Electric, supra,* 50 Cal.App.5th at p. 233.) We agree with this reasoning. The situation is different in the present case because— as a result of Travelers's framing of the case at trial—the issue is primacy of liability for the *entire* cost of the defense.

27

Travelers argues that ruling against it would violate public policy by giving subcontractors an incentive to breach their contracts and leave it to others to assume the costs of defense. As the *Cleveland Wrecking* and *Valley Crest* courts commented, it is better "to permit subrogation for an insurer that fulfilled its contractual obligations, even if the result was a windfall for the insurer," than to "reward parties who refuse to fulfill their alleged indemnification obligations." (*Valley Crest, supra,* 238 Cal.App.4th at p. 491; *Cleveland Wrecking, supra,* 182 Cal.App.4th at p. 47.) We fully agree that subcontractors should not be able to reject their contractual obligations to indemnify and defend without consequence. It does not follow, however, that respondents can be held jointly and severally liable for the entire remaining cost of Pulte's defense. Each subcontractor remains liable for its proportionate share of the defense costs—but not for more than that proportionate share. [14]

---

[14] Amendments to section 2782 subsequent to the contracts in the present case further elaborate this point, providing that if a subcontractor fails to timely and adequately perform its obligations to either defend a claim against the builder or general contractor arising from the subcontractor's work or pay "no more than a reasonable allocated share of the builder's or general contractor's defense fees and costs," the builder or general contractor has a right to pursue a claim for compensatory and consequential damages, but such defense fees must be allocated to the subcontractor consistent with the requirement that the subcontractor's liability is limited to claims arising from the scope of its work. (§ 2782, subds. (d), (e), (f).)

Subdivision (d) of section 2782 prohibits construction contracts purporting to require a subcontractor to indemnify or defend a builder or general contractor "to the extent the claims do not arise out of, pertain to, or relate to the scope of work in the written agreement between the parties."

Section 2782, subdivision (e) of the statute permits a subcontractor to satisfy its defense obligation by either defending "the claim with counsel of its choice" (*id*., subd. (e)(1)) or paying "within 30 days of receipt of an invoice from the builder or general contractor, no more than a reasonable allocated

As we have said, " '[t]he subrogated insurer is said to " 'stand in the shoes' " of its insured, because it has no greater rights than the insured.' " (*Cleveland Wrecking, supra,* 182 Cal.App.4th at p. 32, quoting *Fireman's Fund, supra,* 65 Cal.App.4th at p. 1292.) Here, Pulte was entitled to indemnity and a defense from each of the respondents only with respect to its own scope of work. To quote the trial court, Travelers "is not seeking to stand in Pulte's shoes. It is seeking to stand in a different, more advantageous set of shoes."[15]

_____

share of the builder's or general contractor's defense fees and costs, on an ongoing basis during the pendency of the claim, subject to reallocation consistent with subdivision (d), and including any amounts reallocated upon final resolution of the claim, either by settlement or judgment. The builder or general contractor shall allocate a share to itself to the extent a claim or claims are alleged to be caused by its work, actions, or omissions, and a share to each subcontractor to the extent a claim or claims are alleged to be caused by the subcontractor's work, actions, or omissions, regardless of whether the builder or general contractor actually tenders the claim to any particular subcontractor, and regardless of whether that subcontractor is participating in the defense. Any amounts not collected from any particular subcontractor may not be collected from any other subcontractor." (*Id*., subd. (e)(2).)

Section 2782, subdivision (f) of the statute gives the builder or general contractor a right to pursue a claim against a subcontractor that fails to "timely and adequately perform its obligations" under subdivision (e). The subdivision specifies, "If, upon request by a subcontractor, a builder or general contractor does not reallocate defense fees to subcontractors within 30 days following final resolution of the claim as described above, the subcontractor shall have the right to pursue a claim against the builder or general contractor for any resulting compensatory and consequential damages, as well as for interest on the fees, from the date of final resolution of the claim, at the rate set forth in subdivision (g) of Section 3260, and the subcontractor's reasonable attorney's fees incurred in connection therewith. The subcontractor shall bear the burden of proof to establish both the failure to reallocate the fees and any resulting damages."

[15] Although the insurer prevailed in *CBR Electric* on similar underlying facts, our reasoning and the result we reach are consistent with that case.

29

In the particular circumstances of this case, we find no abuse of discretion in the trial court's determination that justice does not require shifting the entire remaining cost of Pulte's defense to respondents, jointly and severally.[16]  To the contrary, the trial court's lengthy statement of decision reflects thoughtful consideration.

## DISPOSITION

The judgment is affirmed.

Costs to respondents.

---

The difference, as we have indicated, is a result of Travelers's trial strategy in the present case.  While the trial court in *CBR Electric* erroneously concluded that the insurer's equitable subrogation claim required it to shift the entire cost of defense to the subcontractors, jointly and severally, the trial court here only adhered to Travelers's insistence that it was pursuing an all-or-nothing claim against respondents.  Just as the *CBR Electric* court agreed "it would be unfair to burden only a small subset of the subcontractors that worked on a project with the entire cost of defending a construction defect action alleging defects in every trade" if equitable subrogation required shifting the entire amount of defense costs to the subcontractors jointly and severally (*CBR Electric, supra,* 50 Cal.App.5th at p. 224), our analysis would be different if Travelers had not sought to hold respondents each responsible for the full cost of Pulte's defense.

[16] This conclusion makes it unnecessary for us to consider Travelers's further contention that the trial court abused its discretion in finding Travelers's failed to establish the eighth element of its equitable subrogation claim concerning proof of the amount of its damages.

                                      _____

                                      Kline, P.J.

We concur:

_____

Richman, J.


_____

Miller, J.


*Carter et al. v. Pulte Home Corporation et al.* (A154757)

Trial Judge:                    Hon. Barry P. Goode

Trial Court:                   Contra Costa County Superior Court


No Appearance for Plaintiffs

No Appearance for Defendants

Attorneys for Interveners
and Appellants:               The Aguilera Law Group
A. Eric Aguilera
Raymond E. Brown
Lindsee B. Falcone

Attorneys for Interveners
and Respondents:            Nicolaides Fink Thorpe Michaelides Sullivan
Jodi S. Green
Jeffrey N. Labovitch
Kimberly A. Hartman, *Pro Hac Vice*

Oles Morrison Rinker & Baker
Kevin P. McCarthy
Bryce D. Carroll
Rebecca D. Takacs